**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CASE NO. 3:21-cv-00134-FDW**

FILED
CHARLOTTE, NC

FEB 1 7 2022

US DISTRICT COURT
WESTERN DISTRICT OF NC

| | |
|---|---|
| **LYNN KAREN HOCK,** | ) |
| | ) |
| **Appellant,** | ) |
| | ) |
| | ) |
| **v.** | ) |
| | ) |
| **U.S. DEPARTMENT OF** | ) |
| **EDUCATION,** | ) |
| | ) |
| **Appellee.** | ) |
| _____ | ) |

### APPELLANT'S BRIEF

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................…...4

JURISDICTIONAL STATEMENT................................................5

STANDARD OF REVIEW.....................................................6

STATEMENT OF ISSUES PRESENTED.........................................7

STATEMENT OF THE CASE...............................................…...9

SUMMARY OF THE ARGUMENT.............................................13

ARGUMENT................................................................17

    I.    The Bankruptcy Court failed to consider Appellant's spouse's
        status as a totally and permanently disabled veteran and source
        of the majority of their combined income in its analysis of
        whether Appellant's student loans should be
        discharged...............................................…....17

    II.    A non-debtor spouse's Veteran's Administration Disability
        Award was never intended by Congress to be considered
        in deciding whether Appellant can repay her student loan
        debt and still maintain a minimal standard of living for
        herself and her dependents.......................................…...21

    III.    The Bankruptcy Court was wrong in its analysis of whether
        Appellant has met the Second Brunner factor by (a)including her
        spouse's Veteran's Disability Award in its analysis and
        (b) looking into the future and assuming all will be rosy..........23

    IV.    Is it required that Appellant apply for a Direct Consolidation
        loan then apply for an income contingent repayment

2

plan in order to show good faith efforts to repay to meet the
third prong of the *Brunner* test where repayment is not yet ripe
and appellant's loans are and always have been in
good standing?................................................................................26

V.   In the year since the bankruptcy court's decision in this case
decisions in 523(a)(8) cases have applied a less restrictive
undue hardship test.  Further, the Department of Education
has left these decisions discharging student loans in
the context of bankruptcy stand......................................27

CONCLUSION....................................................................34

CERTIFICATE OF COMPLIANCE...............................................35

CERTIFICATE OF SERVICE.....................................................36

3

# TABLE OF AUTHORITIES

**Cases**                                                            **Pages**

Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985)..........................6

Brunner v. New York State Higher Educ. Servs. Corp.,

46 B.R. 752, 756 (S.D.N.Y. 1985), aff'd, 831 F.2d 395 (2d Cir. 1987)...... 8, 9,

               14, 16, 17, 18, 23, 24, 28, 29, 30, 32, 33, 34

Cypher Chiropractic Ctr. V. Runski (In re Runski),

102 F. 3d 774,  (4th Cir. 1996)....................................................................6

Educ. Credit Mgmt. Corp. v. Mosko, 515 F3d 319 (4th Cir. 2008)................27

Frushour v.Educ. Credit Mgmt. Corp. (In re Frushour),

33 F.3d 393 (4th Cir. 2005).................................................16, 23, 27 28

Randall v. Navient Sols. (In re Randall), 628 B.R. 772

(Bankr. D. Md. 2021)....................................................................29

Spencer v. Educ. Credit Mgmt. Corp., 541 F.3d 393 (4th Cir. 2005)..............27

Thomas v. United States Dep't of Educ. (In re Thomas),

581 B.R. 481 (Bankr. N.D. Tex. 2017)............................................28

Wheat v. Great Lakes Higher Educ. Corp. (In re Wheat), Adv. Proc. 18-03041

(Bankr. Mid Dist. Alabama, decided January 25, 2022).......................31, 32

Wolfson v. DeVos, Adv. No. 19-50717

(Bankr. D. Delaware, decided January 14, 2022)...............................30, 31

In re Augustin, 588 B.R. 141(Bankr. D. Md. 2018)................................18

In re Brightful, 267 F.3d 324 (3d Cir. 2001).....................................23, 24

In re Faish, 72 F.3d 298 (3d Cir. 1995.............................................30

**Statutes**

11 U.S.C. §523(a)(8)……………………………………………7, 12, 18, 20, 32

20 U.S.C. §1087(a)(2)…………………………………………………….21

20 U.S.C. §1087e(a)(1)…………………………………………………..21

20 U.S.C. §1087dd(c)1)(F)(iv)…………………………………………..21

28 U.S.C. §158(a)(1), 1333 and 1334……………………………….....5

38 U.S.C. §5301(a)(1)…………………………………………………...18

**Rules**

Fed. R. Bankr. P. 8003……………………………………………………5

34 CFR 685.204………………………………………………9, 15, 27

**Other Authorities**

Executive Order entitled "Presidential Memorandum on Discharging
the Federal Student Loan Debt of Totally and Permanently
Disabled Veterans," dated August 21, 2019………………………… 21-22


Forbes.com, February 4, 2022…………………………………………...17

www.ssa.gov, Social Security Bulletin, Vol. 70 No. 3, "The Future Financial
Status of the Social Security Program." ………………………………25


"Trial Handbook: Exceptions to Discharge in Chapters 7 and 13" dated
May 2019 by Unite States Bankruptcy Judge Jeffrey P. Norman……………28

## JURISDICTIONAL STATEMENT

The United States District Court for the Western District of North Carolina

(the "Court") has appellate jurisdiction over this appeal pursuant to 28 U.S.C.

Sections 158(a)(1), 1331 and 1334 and Fed. R. Bankr. P. 8003 (the "Bankruptcy Rules"). This is an appeal from the final order of the Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court") which was entered on March 17, 2021 in *Hock v. Department of Education*, Case No. 18-31795 and Adv. Pro. No. 19-03016. The adversary proceeding had been brought to determine the dischargeability of Appellant's Parent Plus federal student loan debt in bankruptcy.

In its *Memorandum Opinion and Order Denying Dischargeability of Student Loan Debt* dated March 17, 2021 (the "Opinion") the Bankruptcy Court found that Appellant's student loan debt was not dischargeable. A Notice of Appeal was originally filed on March 31, 2021. Extensions of time to file Appellant's brief were granted on January 12, 2022 and February 8, 2022. Appellant's brief is due on February 17, 2022. On February 15, 2022 Appellee, Department of Education, and Appellant herein filed a Joint Motion to Stay the Case through and including May 1, 2022.

## STANDARD OF REVIEW

On appeal, the court "may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. *See Also,* Fed. R. Civ. P. 52(a). District courts exercise *de novo* review of a decision issued by the bankruptcy court, "effectively standing in

its shoes to consider directly the findings of fact and conclusions of law by the bankruptcy court." *Cypher Chiropractic Ctr. v. Runski (In re Runski),* 102 F.3d 744, 745 (4th Cir. 1996). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).

## **STATEMENT OF ISSUES PRESENTED**

1. Whether the Bankruptcy Court erred in concluding that Appellant did not demonstrate that repayment of the loans would result in undue hardship under the plain meaning of Section 523(a)(8).

2. Whether the Bankruptcy Court erred in including Appellant's non-debtor spouse's total and permanent veteran's disability award and the lifestyle it affords its recipient in its analysis of whether Appellant, on her own, could maintain a "minimal standard of living for herself and her dependents."

3. Whether the Bankruptcy Court erred in failing to consider whether based on her current income and expenses, without consideration of her non-debtor spouse's Veteran's Disability award, Appellant could maintain a "minimal standard of living for herself and her dependents."

4. Whether the Bankruptcy Court erred in applying the "minimal standard of living" test to a non-Debtor totally and permanently disabled veteran in

assessing his spouse's ability to have her student loans discharged through bankruptcy.

5. Whether, in failing to consider the disabled veteran status of Appellant's spouse, the Bankruptcy Court erred in its analysis which requires Appellant, and thus her spouse, to "maintain a certainty of hopelessness" in order to meet the threshold of "undue hardship" under the harsh judicial interpretation of that statutorily undefined term as enunciated in *Brunner v. New York State Higher Educ. Servs. Corp.*, 46 B.R. 752, 756 (S.D.N.Y. 1985), aff'd, 831 F.2d 395 (2d Cir. 1987) (*"Brunner"*).

6. Whether the Bankruptcy Court erred in failing to consider the repercussions of the policy implications regarding disabled veterans in a similar position to Appellant's husband: in that (a) Appellant is one half of a married couple, (b) the other half of that couple, her husband, is a totally and permanently disabled veteran and, (c) as a couple, the Court's analysis results in a demand that Appellant's spouse compromise his lifestyle choices along with her. In effect the Bankruptcy Court is asking a disabled veteran to "maintain a certainty of hopelessness" along with his spouse so she can discharge her student loan debt through bankruptcy.

7. Whether the Bankruptcy Court erred in failing to find that Appellant's circumstances are unlikely to change.

8. Whether the Bankruptcy Court erred in finding that Appellant did not make a good faith effort to repay her loans when, at this point in the life of her student loans, she has adhered to all rules and her student loans are all in good standing.

9. Whether the Bankruptcy Court erred in finding that Appellant did not make a good faith effort to repay her loans by choosing to defer payment on those loans as allowed unconditionally by 34 CFR 685.204, while also finding that her payments, even if she consolidated her PLUS loans and applied for Income Contingent Repayment ("ICR"), would be $0 and the Government would not be repaid.

10. Whether the Bankruptcy Court erred in not finding that this case differs from prior caselaw in that Appellant's loans are not yet subject to repayment.

11. Subsequent to the Bankruptcy Court's Opinion on March 17, 2021 there have been significant changes in caselaw and in the way Appellee DOE has stated it would be handling adversary proceedings going forward. DOE is currently reviewing its current bankruptcy polices and determined that this case, among other similar adversary proceedings be stayed while the student loan payment pause remains in effect. That new caselaw and DOE's response to favorable rulings for discharge of student loan debt through

bankruptcy may change the way the *Brunner* test is administered going forward.

## STATEMENT OF THE CASE

Appellant is a now seventy-one year old woman who has not been employed since June 2017. Joint Stipulation of Facts and Admissibility of Documents, Case 19-03016, Docket No. 31 ("Joint Stipulation") ¶1, The Opinion, page 2, ¶1. Appellant's husband, a former Navy SEAL, became permanently disabled while serving his country. His service-connected disability is 90% being paid at 100% because the Veteran's Administration has deemed him unemployable due to his service-connected disabilities. Joint Stipulation ¶2, Opinion page 2-3 ¶2.

On or about July 29, 2013 Appellant executed an Application and Master Promissory Note with Appellee, United States Department of Education )"DOE") for a Federal Direct Parent PLUS Loan. Joint Stipulation ¶14, Opinion at page 5 ¶16. The loan was taken out on behalf of Appellant's son. Joint Stipulation ¶15 Opinion at page 5 ¶17. There is no dispute that Appellant is solely responsible for the repayment of the debt as it was not co-signed debt between Appellant and her son or Appellant and her husband. Joint Stipulation ¶17, Opinion page 5, ¶18.

Appellant underwent cancer surgery and treatment from October 2016 through January 2017. Screens and scans continue to date. Appellant was also

hospitalized two weeks post-surgery for acute hypercalcemia, a condition which almost ended her life. Joint Stipulation ¶¶5-10, Opinion at page 3-4 ¶¶5-12. As a result of the effects of hypercalcemia, which linger to date, when Appellant returned to work at Merrill Lynch Wealth Management in February 2017, following a 3 ½ month disability leave, she could no longer perform as she had for the previous four years. As a result, Appellant entered into an agreement with Merrill Lynch Wealth Management on May 22, 2017 in which she and the company agreed to a mutual separation to occur no later than June 20, 2017. Appellant left the company on June 20, 2017 and has not been employed since that date.

Disbursements were made to Berklee College of Music on September 21, 2013 and September 20, 2014. The total outstanding principal of these two loans is $118,105.64. Accrued Interest totals $25,475.84. As of the date of this Appeal the total owed including interest is $143,581.48. Joint Stipulation ¶¶ 17-18, Opinion pages 5-6, ¶¶ 19-20. Effective March 13, 2020 interest rates on these loans have been reduced to zero and payments have been paused due to the Coronavirus Pandemic National Emergency. As of now in that interest will resume accruing at 6.1% and 7.21% on respectively on May 1, 2022 if the pause is not extended.

Other than a three-month period from December 2016 through the end of

January 2017 when Appellant's son changed schools causing the deferments to

briefly lapse, the loans have been in deferment status from February 1, 2014

through the present. The deferments were at Appellant's request, as permitted by

34 CFR 685.204 (a)(3) and (c)(2), conditioned only upon the enrollment status of

Appellant's son and the loans being in good standing. Joint Stipulation at ¶20,

Opinion at page 6 ¶22. (Note: Both the Joint Stipulation and the Opinion

reference 34 CFR 685.204(c)(s) which does not exist.) Regulations do not require

that a borrower seeking deferral of a PLUS loan pursuant to 34 CFR 685.204 first

refinance into a Direct Consolidation Loan then enter into an Income Contingent

Repayment Plan, nor is there any statutory basis for requiring it in order to prove

"undue hardship" under 11 U.S.C. §523(a)(8).

During the three-month period when deferments lapsed, from October 2016

through January 2017, Appellant made full payment as each of the two payments

came due. Appellant's payments totaled $2,774.52. Joint Stipulation ¶19, Opinion

page 6 ¶21. At that time Appellant was employed and was able to make those

payments on her own. As of February 1, 2017 Appellant's son was back in school

and the loans have been in deferment status pursuant to from that time to present.

Deferment status of Appellant's Parent PLUS loans is scheduled to expire in

January 2023. Appellant's loans with DOE have remained current and in good

standing since they were originated in 2014. Joint Stipulation ¶20, Opinion at page 6 ¶22.

In April 2018 Appellant and her husband moved from California, their long-time home, to North Carolina, in an effort to reduce expenses. Joint Stipulation ¶12, Opinion page 5 ¶14. On December 3, 2018 Appellant filed a voluntary Chapter 7 case in this district (Bankr. No 18-31795, Doc. 1) Joint Stipulation ¶12, Opinion page 5 ¶14.

On March 5, 2019, Appellant's Chapter 7 bankruptcy case was discharged without any assets being liquidated or administered by the Chapter 7 Trustee, and without any objection from any of her creditors (Bankr. No 18-31795, Doc. 25). Appellant's household "current monthly income" in her underlying bankruptcy case was $520.11 per month as calculated under Section 101(10A) of the Bankruptcy Code. Appellant's household "disposable income" in the underlying bankruptcy case was therefore $0 per month because her allowed monthly expenses exceeded $520.11 per month. Joint Stipulation ¶13, Opinion page 5 ¶15.

On March 1, 2019 Appellant filed an adversary proceeding seeking discharge of her student loans. (Adv. Proc. No. 19-03016, Doc. No. 1).

On March 17, 2021 Judge Whitley issued his Opinion for the Bankruptcy Court (the "Opinion") ruling that Appellant's student loans are not dischargeable.

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court did not properly consider whether Appellant's husband's Veteran's Disability Award ("VDA") should be excluded in its analysis of whether Appellant could or could not maintain, based on her current income and expenses, a "minimal standard of living." Appellant contends, and it is a question of first impression for the Court. Appellant contends that Congress did not intend for a VDA of a non-debtor spouse to enter into the calculation of how much money was available to the debtor spouse to pay her student loans nor did Congress intend for the disabled veteran to contribute towards a payment of a loan he has no legal responsibility to pay.

Further, in its analysis of the first prong of the *Brunner* test, Appellant contends that the Bankruptcy Court was wrong to look at the lifestyle she and her husband, as a couple, are afforded as a result of an award received by her husband from the Government to say thank you for his service and reward him for injuries suffered in service to his country. The Bankruptcy Court was adamant that Appellant could "rein in her household expenses so as to both live and provide for a $1,680 student loan payment." Opinion at page 19. The Bankruptcy Court's analysis of spending treats Appellant as an individual while including her husband's income, including his VDA, in the calculation. The Bankruptcy Court suggests that we, as a couple, without considering that the other half of the couple

is a totally and permanently disabled veteran, move to more affordable housing, spend less on food, clothing, cable, subscription services and cell phones to attain a "minimal standard of living." Opinion at page 19-20. This is the lifestyle of Appellant's husband as well as hers. Congress never intended his VDA to be used to pay her loans as the Bankruptcy Court has suggested in its calculations.

The Court went on to find that Appellant failed the second prong of the *Brunner* test by its improperly including her husband's VDA in the calculations of her income. "Neither age nor health prevents [Appellant] from having a <u>current</u> household income of $6,982.33. [Appellant's] household income is entirely derived from social security, disability and pension income. These revenues will continue irrespective of Hock's ability to work." Opinion at Page 24. The "disability" income the Bankruptcy Court referred to is Appellant's husband's VDA.

This second prong of the *Brunner* test is prospective in nature and requires prognostication on the part of the Bankruptcy Court. It is an impossible task and one that, until recently, has consistently resulted in every debtor's failure to prove the circumstances are likely to persist. In this case the VDA will end if God forbid Appellant's husband passes away or if the couple's marriage dissolves. We cannot predict the future. The Court should not ask us to.

In its analysis of Prong 3 of the *Brunner* test, the Bankruptcy Court went on to find that although Appellant's loans are in deferral status, in full compliance with 34 CFR 685.204 (a)(3) and (c)(2), and remain in good standing, having been so since inception, Appellant has not made good faith efforts to repay the loans because she has not applied for consolidation of her loans and then ICR although which the court acknowledges that her doing so would still result in would still result in a $0 monthly payment. Unlike other cases, Appellant's loans are not currently in repayment status. There is, therefore, no statutory necessity at this time for Appellant to have sought consolidation of her PLUS loans then enter into an ICR plan, especially when neither results in any monies being repaid.

The Bankruptcy Court applied the exacting *Brunner* test, giving it the harshest of applications. As stated in the Opinion, page 13, "And since the *Brunner* test has been adopted by the Fourth Circuit (in *Frushour*) as the applicable standard by which to consider Section 523(a)(8) student loan dischargeability requests, it is also controlling law. <u>This bankruptcy court is not at liberty to fashion another test.</u> [Appellant's] case must be considered under *Brunner*." [emphasis added]. While not disputing that *Brunner* is still precedent, since the Bankruptcy Court's Opinion was issued in March 2021 there has been a shift in the way *Brunner* has been interpreted by courts all over the country, with bankruptcy courts, indeed fashioning other tests, even in the Fourth Circuit. *See, Infra.* The courts have

eschewed the harsh interpretation courts have given the undefined "undue hardship" language of the statute, pivoting towards a "totality of the circumstances" reading of the Congressional intent and acknowledging that bankruptcy courts are courts of equity rather than courts of punishment. In light of the recent bankruptcy courts' interpretations of *Brunner*, discussed at length *infra*, Appellee, DOE, has withdrawn its appeals in these cases, allowing those debtors' student loans to be discharged.

Further, DOE has alerted Debtors in Adversary Proceedings that it is 'reviewing current bankruptcy policies, a process which remains ongoing. While the student loan payment pause remains in effect, any borrower in an adversary bankruptcy proceeding can request and receive a stay on their proceedings." DOE statement to "The Daily Poster" quoted in Forbes.com on February 4, 2022. On February 15, 2022 Appellee, DOE and Appellant filed a Joint Motion to Stay the Proceedings through May 1, 2022. (Docket No. 16). As of time of filing this Brief the Court has not acted on that Motion.

## THE ARGUMENT

I. **The Bankruptcy Court failed to consider Appellant's spouse's status as a totally and permanently disabled veteran and source of the majority of their combined income in its analysis of whether Appellant's student loans should be discharged**

The Bankruptcy Court's Opinion briefly acknowledged the fact that Appellant's spouse is a totally and permanently disabled veteran. (Opinion, ¶2, Pages 2-3). The Opinion also acknowledged that Appellant, in her Motion for Summary Judgment (Doc. No. 18, p.7) had raised the issue that that inclusion of her husband's veteran's disability award in the calculation under *Brunner* would be improper (Opinion page 16).

This case presents a case of first impression. There is no caselaw on point to guide the Court. The threshold question which must be answered: How should the Bankruptcy Court treat the DVA payments that were awarded to a non-debtor spouse in an adversary proceeding brought by his debtor spouse to discharge her student loan debt through bankruptcy? There are two competing statutory schemes at play. The Bankruptcy Court chose to completely ignore one of them.

The Bankruptcy Court states in its Opinion, "it is well settled law that the income of non-debtor spouses must be counted in Section 523(a)(8) cases under *Brunner*, *See, e.g. In re Augustin*, 588 B.R. 141,150 (Bankr. D. Md. 2018) (citing multiple cases). And it is equally clear that all income sources (wage income, social security, disability and pension benefits) are considered under *Brunner* for Section 523(a)(8) purposes." Not one of those cases involve a non-debtor spouse whose income is primarily derived from a VDA. The Bankruptcy Court's analysis

18

of which income sources must be considered completely ignored the distinction between disability income and a VDA and how each is treated.

Congress has created a statutory scheme for bankruptcy and another one for veterans with service-connected disabilities. In the context of this case both statutory schemes and the policies that each of them shaped need to be considered and one weighed against the other in light of these facts and circumstances.

The question at hand is how do these statutory schemes interconnect when they collide as they do in this case? This question was never touched upon in the Bankruptcy Court's Opinion.

In the case of Veteran's Administration Benefits under Title 38 U.S.C. §5301(a)(1), benefits paid by the Department of Veterans Affairs to veterans with service-connected disabilities are not subject to levy, seizure or attachment. In looking at the statutory scheme Congress fashioned to protect veterans with service connected disabilities it appears obvious that Congress intended to distinguish between disability income under the Social Security Administration and a VDA through the Veteran's Administration, allowing for inclusion of Social Security Disability Income while shielding veterans from governmental attachment of their VDAs.

19

Congress created a separate statutory plan for those injured in service of their country. Rather than having Veterans with service-connected injuries simply apply for disability income through the Social Security Administration, Congress set up an entire statutory scheme for the disabled veteran, not available to a person disabled in any other context. Disability income in the context of the Social Security Administration is payment in lieu of wages. A VDA is analogous to a personal injury award for injuries suffered in service of the United States.

The issue to be resolved is whether a non-debtor Spouse's veteran's disability award should be considered as part of his spouse's income in determining whether Appellant can maintain a "minimal standard of living if forced to repay her federal student loan debt? Did Congress intend for a Bankruptcy Court to suggest, as it did in its Opinion, that a married disabled veteran whose spouse seeks to discharge her own student loan debt through bankruptcy, along with other debts separate and apart from his, must downgrade his lifestyle along with hers? Did Congress intend for him to use his DVA money to pay off her loans, that he has no legal responsibility to pay rather than enjoy the lifestyle of his choosing with the means afforded him by Congress as acknowledgement of his sacrifice in service of his country?

Perhaps there is guidance in the fact that Congress has granted disabled veterans like Appellant's spouse the ability, with minimal paperwork, to discharge

their own student loans. Appellant believes that was not the intent of Congress to consider her husband's DVA in its calculation. It is a question of law the Bankruptcy Court simply did not address in its Opinion and one which has never been addressed in caselaw.

**II**    **A non-debtor spouse's Veteran's Administration Disability Award was never intended by Congress to be considered in deciding whether Appellant can repay her student loan debt and still maintain a minimal standard of living for herself and her dependents.**

As the Bankruptcy Court's Opinion states in its consideration of the first *Brunner* factor, "Section 523(a)(8) considers which few individuals out of the broad universe of bankruptcy debtors would face an 'undue hardship' if forced to repay their student loans. Only this small subset – debtors facing the most dire circumstances – can discharge their student loans." Opinion at page 16. That statement, which sounds like the flood gates would open, overwhelming the bankruptcy courts, vastly inflates the number of bankruptcy debtors (a) with student loans and (b) who would, as Appellant did, survive the means test to qualify for discharge of their debts in a Chapter 7 proceeding.

It is inarguable that a totally and permanently disabled veteran is able to discharge his own student loan pursuant to 20 U.S.C. 1087(a)(2), 1087e(a)(1) and 1087dd(c)(1)(F)(iv). To make such discharge easier for such disabled veterans, on August 21, 2019 then-President Trump issued an Executive Order entitled "Presidential Memorandum on Discharging the Federal Student Loan Debt of Totally and Permanently Disabled Veterans," requiring the Secretaries of Education and Veterans Affairs to implement policies to relieve any and all administrative burdens from disabled veterans seeking to discharge their federal student loan debt. Like so many Presidents before him, President Trump singled out and honored these men and women:

> Since our Founding, the United States has been blessed with men and women willing to serve in defense of our Nation and our ideals. Many of those answering the call to serve make the ultimate sacrifice for their country, and many others carry physical and emotional scars for the rest of their lives. The Higher Education Act of 1965, as amended by the Higher Education Opportunity Act in 2008 and other acts (Higher Education Act), honors veterans who are totally and permanently disabled as a result of their service to the Nation by providing for the discharge of their Federal student loan debt. Borrowers who have been determined by the Secretary of Veterans Affairs to be unemployable due to a service-connected condition and who provide documentation of that determination to the Secretary of Education are entitled to the discharge of such debt.

Does it follow, therefore, that in applying Section 523(a)(8) Congress intended for the courts to look at the debtor's lifestyle separate and apart from her disabled spouse's lifestyle or to effectively punish the disabled veteran along with his spouse? They live together. Where they live, what entertainment options they

22

choose cannot impact only one. Did Congress intend for the disabled veteran to be told that in order for his spouse to have her student loan debt discharged he must, along with his spouse, economize to the point of a minimal standard of living when Congress has given him an award to reward him for service to his country and the physical and emotional scars he will carry for the rest of his life? That would be the effective result of the Bankruptcy Court's reasoning. Hasn't he suffered "undue hardship" enough?

The Bankruptcy Court's opinion goes through calculations, all including the VDA as part of "household income." The Bankruptcy Court deems, based upon numbers available at the time, before recent cost of living adjustments which added little to the bottom line, that Appellant's household income is $6,673.78, including the VDA, (Emphasis added.). Household expenses were reported to be $6,152.60, ending with a positive net income of $521.18 per month, before paying student loan debt. Opinion at page 17 and *fn 15.* If, however, the VDA were subtracted from that amount it would leave $3,690.10 household income, inclusive of both Appellant's and her husband's social security income and her husband's pension. Even if expenses were severely reduced it would still fail to have disposable income to pay even a minute portion of Appellant's student loan debt of $1,680 per month.

**III  The Bankruptcy Court was wrong in its analysis of whether Appellant has met the Second Brunner factor by (a) including her spouse's Veteran's Disability Award in its analysis and (b) looking into the future and assuming all will be rosy**

The second *Brunner* factor is "the heart of the *Brunner* test….It is a demanding requirement and necessitates that a 'certainty of hopelessness' exists that the debtor will not be able to repay the student loans." *In re Frushour*, 33 F.3d 393, 401 (4th Cir. 2005) quoting *In re Brightful*, 267 F.3d 324, 328 (3rd Cir. 2001). The second *Brunner* factor is "prospective in nature and looks for exceptional circumstances beyond the debtor's current situation." *Frushour*, 433 F.3d 393 at 401. The *Brunner* court equated this second part of its test to a "certainty of hopelessness" standard, *Brunner*, 46 B.R. at 755, requiring a showing that the debtor is truly without hope in repaying her student loans. The Fourth Circuit adopted this harsh standard in *Frushour*.

The Bankruptcy Court went on to find that Appellant failed the second prong of the *Brunner* test. The Bankruptcy Court, again including Appellant's husband's VDA in her household income, found, without reason therefor, that since, in its opinion, neither age nor health currently prevents Appellant from having an adequate revenue stream. Opinion at page 24. The Bankruptcy Court goes on to prophecy that this revenue stream "will continue irrespective of Appellant's ability to work." Opinion at Page 24. The Bankruptcy Court opines "Since Hock presently has the present ability to pay her loans and maintain a

minimal standard of living, and since that income will continue to be available to her irrespective of her ability to work, Hock fails the second *Brunner* prong." Opinion at page 24. Once again the Bankruptcy Court factored Appellant's husband's VDA into its minimal standard of living analysis.

What the Bankruptcy Court failed to acknowledge, over and above that the VDA should be excluded from all income calculations, is that while it is true that all the other income is not dependent upon Appellant's ability to work, expenses could very well skyrocket during the coming years for a couple already in their Golden Years. The Bankruptcy Court turned a blind eye to the probability of increased medical and long-term care expenses encountered as one ages. Additionally, in this case the VDA will end if, God forbid, Appellant's husband passes away or if the couple's marriage dissolves. Further, the Social Security Administration predicts that its trust funds reserves are projected to become exhausted in 2037 and payments will cease. www.ssa.gov, Social Security Bulletin, Vol. 70 No. 3, "The Future Financial Status of the Social Security Program." The Bankruptcy Court chose to ignore all possible worst-case scenarios as if they could not possibly exist when they are indeed as possible, if not more probably than, the rosiest of all possible pictures it paints in its Opinion.

At the time of the Bankruptcy Court's Opinion, due to its prospective nature, this had been impossible for any plaintiff seeking to obtain a discharge of student

loans through an adversary procedure to prove in the Fourth Circuit. It would require a Ouija board or a Delorean equipped to go "Back To The Future" to be able to say with certainty sufficient to satisfy the court that such circumstances are likely to persist for a significant portion of the repayment period. We cannot predict the future. The Bankruptcy Court should not even try.

## IV   IS IT REQUIRED THAT APPPELLANT APPLY FOR A DIRECT CONSOLIDATION LOAN THEN APPLY FOR AN INCOME CONTINGENT REPAYMENT PLAN IN ORDER TO SHOW GOOD FAITH EFFORTS TO REPAY TO MEET THE THIRD PRONG OF THE BRUNNER TEST WHERE REPAYMENT IS NOT YET RIPE AND APPELLANT'S LOANS ARE AND ALWAYS HAVE BEEN IN GOOD STANDING?

Prong three requires that the debtor has made good faith efforts to repay the loans. Appellee has made much of the fact that Appellant has not applied for loan consolidation and, thereafter, Income Contingent Repayment ("ICR").

DOE has contended, and the Bankruptcy Court agreed, that as interpreted by the judiciary, the third prong of the *Brunner* test cannot be met without applying for Direct Consolidation and entering into an ICR plan as a prerequisite to discharge of the loans even though the payment amount would be $0. Joint

Stipulation ¶¶23-27 (quoted verbatim by the Opinion at pages 7-8, Paragraphs 25-29).

This requirement, however, disregards that there is no evidence that it was the intent of Congress that in order to show good faith a Borrower consolidate loans and enter into an ICR plan prior to requesting and obtaining an undue hardship discharge under 11 U.S.C. §523(a)(8). This is especially the situation when, as in the instant case, those loans are in good standing and deferred as per the statutory scheme and consolidation and entering into an ICR plan will still result in a $0 payment, adding notiong. 334 CFR 685.204 and Joint Stipulation ¶20.

> ## V. IN THE YEAR SINCE THE BANKRUPTCY COURT'S DECISION IN THIS CASE DECISIONS IN 523(a)(8) CASES HAVE APPLIED A LESS RESTRICTIVE UNDUE HARDSHIP TEST. FURTHER, THE DEPARTMENT OF EDUCATION HAS LEFT THESE DECISIONS DISCHARGING STUDENT LOANS IN THE CONTEXT OF BANKRUPTCY STAND.

In determining how to interpret the "undue hardship" standard, which Congress left undefined, judges over the years have fashioned a harsh definition that could not be met. As the Bankruptcy Court noted in its Opinion at page 16, "The Fourth Circuit has considered student loan dischargeability under 11 U.S.C. 523(a)(8) on only three occasions." *Spencer v. Educ. Credit Mgmt. Corp.*, 541 F.3d 538 (4th Cir. 2008), *Educ. Credit Mgmt. Corp. v. Mosko*, 515 F.3d 319 (4th

27

Cir. 2008) and *Frushour v. Educ. Credit Mgmt. Corp.*, 433 F.3d 393 (4th Cir.

2005). Only three times in the past seventeen (17) years have undue hardship

dischargeability cases made it to the Fourth Circuit Court of Appeals. The rest

have either (a) never been raised in an adversary proceeding, (b) never been

appealed or (c) their appeal to the Fourth Circuit was turned down. Most student

loan debtors don't even try to have their loans discharged, even in the context of a

bankruptcy. Many because they cannot afford an adversary proceeding and do not

have the ability to attempt to advocate for themselves through the courts, others

because they have the income to support their payments and would not meet the

Means Test of Chapter 7 discharge.

The way the *Brunner* standard that has been followed in most, if not all

Circuits, until recently has been so exacting it was rarely met by a debtor. In his

"Trial Handbook: Exceptions to Discharge in Chapters 7 and 13", dated May 2019,

United States Bankruptcy Judge Jeffrey P. Norman wrote:

> I will borrow from the wise United States Bankruptcy Judge Harlin
> "Cooter" Hale: 'This Court has seen a number of actions in which
> debtors are trying to discharge their student loans. Not all of them
> have been meritorious. Many, however, have drawn a great deal of
> sympathy from this Court. Some appeared to satisfy the plain
> language of the statute, which merely requires that the debt, if
> excepted from discharge, would impose an "undue hardship" on the
> debtor and the debtor's dependents. Some would have satisfied the
> "totality of the circumstances" test adopted in other Circuits for
> determining whether the debt would impose an undue hardship. But
> none have satisfied the demanding standard adopted as controlling in

this Circuit. That is why, in fifteen years on the bench, the undersigned judge has never discharged a student loan over the objection of the lender. This case is no different.' *Thomas v. United States Dep't of Educ. (In re Thomas)*, 581 B.R. 481, 482 (Bankr. N.D. Tex. 2017).

In its Opinion, dated March 17, 2021, the Bankruptcy Court relies on

precedent of *Brunner v. New York State Higher Educ. Servs. Corp.,* 46 B.R. 752

(S.D.N.Y. 1985), aff'd 831 F.2d 395 (2d Cir. 1987) applying its three-prong test,

requiring that each element of this test is met. As stated in the Opinion, page 13,

"And since the *Brunner* test has been adopted by the Fourth Circuit (in *Frushour*)

as the applicable standard by which to consider Section 523(a)(8) student loan

dischargeability requests, it is also controlling law. <u>This bankruptcy court is not at</u>

<u>liberty to fashion another test.</u> [Appellant's] case must be considered under

*Brunner*." [Emphasis added].

While not disputing that *Brunner* is still precedent, since the Bankruptcy

Court's Opinion was issued there has been a tectonic shift in the way *Brunner* has

been interpreted by courts all over the country, even in the Fourth Circuit.

In *Randall v. Navient Sols. (In re Randall)*, 628 B.R. 772 (Bankr. D. Md

2021), decided June 21, 2021, the United States Bankruptcy Court for the District

of Maryland, a District in the 4th Circuit, found an equitable solution by balancing

the equities between a bankruptcy case which "generally offers the honest but

unfortunate debtor a financial fresh start" with Congress' expressly excepting

student loan debt from such discharge. Judge Harner recognized that "a mere hardship is not enough; it must be an undue hardship….That said, the Code does not require a debtor to be left wearing nothing but the proverbial Barrel in order to repay her student loans." *Randall,* 628 B.R. 772, 776. Judge Harner balanced the interests of both parties and determined that Randall might be able to repay $12,000 of her $190,800.35 student loan debt over the next 10 years and discharged the rest. In doing so, Judge Harner took judicial notice of the fact that "Many individuals are burdened by student loan debt. In fact, recent statistics suggest that the aggregate amount of U.S. student loan debt exceeds $1.7 trillion." *Id* at 779, fn. 8. No appeal was taken in this case. The case was closed on July 26, 2021.

There have been several other cases in other Circuits since the Bankruptcy Court's opinion in this case which have also significantly re-evaluated the way in which the *Brunner* test is interpreted.

In *Wolfson v. DeVos*, Adv. No. 19-50717 (Bankr. D. Delaware) ("*Wolfson*") decided January 14, 2022, Chief Judge Laurie Selber Silverstein took note of the controversy generated by the *Brunner* test and "the wide-ranging interpretations that courts have historically produced in applying the test." *Wolfson* at page 2. Judge Silverstein went on to state "Courts of late have challenged interpretations that, through a combination of legislative change and 'judicial gloss' result in a test

that is far more onerous than the one first articulated in *Brunner*....in short, I agree

with the general premise that the most exacting interpretations of Brunner are

unmoored from the original test and the plain language of "undue burden."

*Wolfson* at pages 2-3. The *Wolfson* opinion looked at policy considerations raised

by both Plaintiff and Defendant. Judge Silverstein considered Defendant's

argument that the high standard imposed in *Brunner* safeguards the integrity of the

student loan system as expressed by the Third Circuit in *In re Faish*, 72 F.3d 298,

305-06 (3d Cir. 1995) and "successive legislative fixes to statute that resulted in a

lifetime ban on discharge subject to the undue burden standard." *Wolfson* at page

28. She also considered Plaintiff's insistence that the "fresh start" policy inherent

in the bankruptcy system weighs in favor of discharge. *Wolfson* at page 28.

> I credit both concerns, but find that in this particular case, refusing to discharge Wolfson's Loans will do little to protect the integrity of the student loan system....Wolfson is unlikely to ever pay down a meaningful amount of his ballooning student loan debt. Entering an income-based repayment plan as Defendants urge he should would yield the same result, concluding with forgiveness of the remainder at the end of the extended repayment period. Given that the ultimate outcome will be substantially the same, there is little benefit to the system in delaying the discharge of Wolfson's loans. Conversely, the 'fresh start' interest in this case is fairly strong.

*Wolfson* at page28-29. Such is the case herein. If Appellant extends the

repayment period through ICR the outcome will be substantially the same as

discharging her loans now. The likelihood of that changing for a seventy-one year

old woman, employed for the past five years is nil.

31

On January 28, 2022 the Department of Education filed a Notice of Appeal in *Wolfson*. Following public outrage and calls to fix the student loan system and its burgeoning debt the Department of Education filed a Stipulation to Dismiss its appeal. The appeal was dismissed on February 4, 2022.

A similar outcome was had in *Wheat v. Great Lakes Higher Educ. Corp. (In re Wheat)*, Adv. Proc. 18-03041(Bankr. Mid Dist. Alabama, decided January 25, 2022). ("*Wheat*"). In *Wheat* the bankruptcy court had discharged Plaintiff's student loan debt pursuant to 11 U.S.C. §523(a)(8) on July 29, 2019, finding that the judicial interpretation of undue hardship which requires a "certainty of hopelessness" was not consistent with the intent of the statute. Defendant filed a Motion to Reconsider, Alter or Amend Judgment, arguing that "the Court failed to adhere to and apply binding precedent when it held that the 'certainty of hopelessness' standard was 'contrary to the law.'" *Wheat* at page 5. In denying Defendant's Motion to Reconsider the court found that Defendant's interpretation of the "certainty of hopelessness" language would "have this Court make a finding that because there is no evidence to show Wheat's circumstances will never change, then she fails to satisfy the second *Brunner* prong....but, that is simply not the standard. And, frankly that interpretation would swallow the rule and make it impossible for any debtor to ever satisfy the second prong." *Wheat* at page 7.

The Department of Justice on behalf of the Department of Education filed its Notice of Appeal in *Wheat* on February 8, 2022. As it had done just a few days earlier in *Wolfson,* the Department of Education filed a Voluntary Withdrawal of its Notice of Appeal on February 11, 2022, letting the discharge stand.

This year the dam has broken, even in a Fourth Circuit bankruptcy court. The Courts are taking a stand and reinterpreting undue hardship under *Brunner*. The sheer amount of student loan debt owed in this country along with a cry for relief has reached many courts and has now reached the Department of Education. Courts have acknowledged that the bankruptcy courts are courts of equity and have returned to looking at these cases from that point of view while still applying a kinder, gentler interpretation of undue hardship under *Brunner*. In response these decisions in the past few months, weeks and days, Appellee DOE has taken a "time out" while repayment is in a pause to reexamine its student loan policies.

As recently as February 4, 2022, following the withdrawal of its appeal in Wolfson, Appellee herein, United States Department of Education, publicly stated that it is reviewing current bankruptcy policies, a process which remains ongoing. It advised that while the student loan payment pause remains in effect, any borrower in an adversary bankruptcy proceeding can request and receive a stay on their proceedings.

On February 15, 2022, in light of recent events discussed, *supra*, Appellee DOE and Appellant filed at Joint Motion to Stay this Case, Document No. 16, on request from Appellant. Following its consultation with Main Justice, the USAO-WDNC had determined that recent guidance from the Executive Office for United States Attorneys applied to this case and offered to file papers to jointly request a litigation stay. As of the time of this filing no decision as to the stay has been forthcoming from the Court.

## CONCLUSION

This court should grant the Joint Motion to Stay the Case filed on February 15, 2022 while DOE evaluates a change in its student loan policies which may impact the dischargeability of Appellant's student loans.

If this matter is not stayed as requested Appellant contends that the Bankruptcy Court erred in including Appellant's spouse's VDA in its calculations of her household income thereby finding that she did meet the definition of undue hardship under *Brunner*. Since the Bankruptcy Court issued its decision the way the *Brunner* test has been defined has since re-interpreted and seemingly accepted by DOE. Accordingly, for the reasons discussed, *supra*, and those included in the designated record, this Court should reverse the Bankruptcy Court's decision and discharge Appellant's student loan debt pursuant to 11 U.S.C. 523(a)(8).

Alternatively, this Court should reverse the Bankruptcy Court's decision and remand this case back to the Bankruptcy Court for reconsideration under new decisions any new guidance from DOE forthcoming in the next months.

Respectfully submitted, this 17th day of February 2022.

Lynn Karen Hock, Appellant, Pro Se

21447 Harken Drive
Cornelius, NC 28031
Telephone: 310-892-6691
E-Mail: lynnhock1@me.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) this brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B) because this brief contains 6,631 words; and (2) complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5)(A) as well as the type style requirements of Fed. R. Bankr. P. 8015(a)(6) because this brief has been prepared in a 14 point Times New Roman font.

Lynn Karen Hock, Appellant, Pro Se

/s/ Lynn Karen Hock
21447 Harken Drive
Cornelius, NC 28031
Telephone: 310-892-6691
E-Mail: lynnhock1@me.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2022, a copy of the Brief of

Appellant was served upon the parties in this action by First-Class United States

Mail, postage prepaid, as indicated below:

J. Seth Johnson
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, NC  28202

Lynn Karen Hock, Appellant, Pro Se

/s/ Lynn Karen Hock
21447 Harken Drive
Cornelius, NC 28031
Telephone: 310-892-6691
E-Mail: lynnhock1@me.com

36