UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:21-CV-00134-MOC

| | |
|---|---|
| In Re:<br><br>LYNN KAREN HOCK,<br><br>DEBTOR. | Chapter 7<br><br>Case No. 18-31795 |
| LYNN KAREN HOCK,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF EDUCATION,<br><br>Defendant. | Adversary Proceeding No. 19-03016 |
| LYNN KAREN HOCK,<br><br>Appellant,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br><br>Appellee. | Civil Case No. 3:21-CV-00134-MOC |

**BRIEF OF THE UNITED STATES
DEPARTMENT OF EDUCATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................v

JURISDICTIONAL STATEMENT ......................................................................1

ISSUES PRESENTED...........................................................................................1

I.      Whether the Bankruptcy Court's factual findings that the non-debtor's spouse's Veterans Affairs (VA) disability income should be considered under the first prong of the *Brunner* test in determining whether Hock could maintain a minimum standard of living while paying back her loan are supported by evidence and not clearly erroneous, and the Bankruptcy Court's legal conclusion that Hock failed to prove the first prong of the *Brunner* test that she could not pay back her loan while maintaining a minimal standard of living, is in accord with the law? ...................................1

II.     Whether the Bankruptcy Court's factual findings that Hock has the ability to pay her loans and maintain a minimal standard of living in the future, and that her revenue stream will continue to be available to her in the future, are supported by the evidence and not clearly erroneous, and the Bankruptcy Court's legal conclusion that Hock did not meet the "demanding requirement" of "certainty of hopelessness" of the second *Brunner* factor is in accord with the law?......................................................................................1

III.    Whether the Bankruptcy Court's factual findings that Hock did not make good faith efforts to repay her student loans by only making two payments, failing to seriously consider loan consolidation, failing to pursue administrative discharge, and failing to make even minimal efforts to minimize her expenses, are supported by the evidence and not clearly erroneous, and the Bankruptcy Court's legal conclusion based on those factual findings that Hock failed to meet the third prong of the *Brunner* test by failing to demonstrate that she made a good faith effort to repay her debt is in accord with the law? .................................................................................2

STATEMENT OF THE CASE.................................................................................2

ii

1.  While in her sixties, Hock borrows and promises to pay back $102,651 in student loans for her son's education ...........................................................2

2.  Although employed at Merrill Lynch and required to repay her loan in ten years, Hock immediately seeks deferments of her loan payment except for a brief three-month period where she made two payments................................3

3.  Hock is diagnosed with thyroid cancer, treated, and remains cancer-free......4

4.  After the surgery and leaving Merrill Lynch, rather than minimizing her expenses to make even minimal loan repayments, Hock and her husband moved into a $375,000 four-bedroom home adjacent to Lake Norman, with a boat dock, leased two luxury vehicles, and lived at an upper income standard with expenditures on nonessential and even luxury expenses..........5

5.  Hock files for bankruptcy ................................................................................6

6.  Hock files an adversary proceeding seeking to discharge her Loan ...............6

7.  The Bankruptcy Court determines that Hock failed to demonstrate by a preponderance of the evidence that repaying her loan would pose an undue hardship under the three-part *Brunner* test ......................................................7

SUMMARY OF THE ARGUMENT ......................................................14

ARGUMENT

I.   Standard of Review........................................................................15

     A.   Discussion ...........................................................................16

          1.   The Bankruptcy Court correctly applied the *Brunner* Test as adopted by the Fourth Circuit .......................16

          2.   The Bankruptcy Court's factual findings that the non-debtor's spouse's Veterans Affairs (VA) disability income should be considered under the first prong of the *Brunner* test in determining whether Hock could maintain a minimum standard of living while paying back her loan are supported by evidence and not clearly erroneous, and the Bankruptcy Court's legal conclusion that Hock failed to prove the first prong of the *Brunner* test that she could not pay back her loan while maintaining a minimal standard of living is in accord with the law ............................................................................18

          3.   The Bankruptcy Court's factual findings that Hock has the ability to pay her loans and maintain a minimal standard of

living in the future, and that her revenue stream will continue to be available to her in the future, is supported by the evidence and not clearly erroneous, and the Bankruptcy Court's legal conclusion that Hock did not meet the "demanding requirement" of "certainty of hopelessness" of the second *Brunner* factor is in accord with the law...................................23

4. The Bankruptcy Court's factual findings that Hock did not make good faith efforts to repay her student loans by only making two payments, failing to seriously consider loan consolidation, failing to pursue administrative discharge, and failing to make even minimal efforts to minimize her expenses are supported by evidence and not clearly erroneous, and the Bankruptcy Court's legal conclusion based on those factual findings that Hock failed to meet the third prong of the *Brunner* test by failing to demonstrate that she made a good faith effort to repay her debt is in accord with the law.............25

CONCLUSION .......................................................................................29

REQUEST FOR DECISION ON THE BRIEFS WITHOUT
        ORAL ARGUMENT ...........................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iv

# TABLE OF AUTHORITIES

Cases

*Anderson v. City of Bessemer City, N.C.*,
  470 U.S. 564 (1985) ........................................................................................16

*Brunner v. New York State Higher Educ. Servs. Corp.*,
  46 B.R. 752 (S.D.N.Y. 1985) ...........................................................................8

*Educ. Credit Mgmt. Corp. v. Buchanan (In re Buchanan),*
  276 B.R. 744 (N.D.W. Va. 2002)......................................................................19

*Educ. Credit Mgmt. Corp. v.Mosko*,
  515 F.3d 319 (4th Cir. 2008) ...........................................................................26

*Educ. Credit Mgmt. Corp. v. Waterhouse,*
  333 B.R. 105 (W.D.N.C. 2005)................................................................... 12, 20

*Frushour v. Educ. Credit Mgmt. Corp.*,
  433 F.3d 393 (4th Cir. 2005) ...................................................................... passim

*Green v. Staples (In re Green),*
  934 F.2d 568 (4th Cir.1991) ............................................................................16

*In re Augustin*,
  588 B.R. 141 (Bankr. D. Md. 2018)......................................................... 9, 18, 19

*In re Cumberworth*,
  347 B.R. 652 (8th Cir. 2006).................................................................. 21, 22, 23

*In re Gill*,
  326 B.R. 611 (Bankr. E.D. Va. 2005) ........................................................ 19, 20

*In re Murphy*,
  305 B.R..................................................................................................... 19, 20

*In re Randall*,
  628 B.R. 772 (Bankr. D. Md. 2021)..................................................................17

*In re Wheat*,
  No. 18-30745-WRS, 2022 WL 243221 (Bankr. M.D. Ala. Jan. 25, 2022) .........17

*In re Wolfson*,
  No. 19-11618 (LSS), 2022 WL 5055468 (Bankr. D. Del. Jan. 14, 2022) ...........17

*McGahren v. First Citizens Bank & Trust Co. (In re Weiss),*
  111 F.3d 1159 (4th Cir.1997) ..........................................................................16

*Perkins v. Vermont Student Assistance Corp.,*
  11 B.R. 160 (Bankr. D. Vt. 1980) ....................................................................11

Case 3:21-cv-00134-MOC   Document 28   Filed 09/01/23   Page 5 of 38

*Sweeney v. Educ. Credit Mgmt. Corp. (In re Sweeney)*,
    304 B.R. 360 (D. Neb.2002).................................................................. 19, 22
*Virginia State Educ. Assistance Auth. v. Dillon*,
    189 B.R. 382 (W.D. Va. 1995)......................................................................19
*White v. U.S. Dep't of Educ. (In re White)*,
    243 B.R. 498 (Bankr. N.D. Ala. 1999).................................................... 19, 22

Statutes

11 U.S.C. § 523(a)(8)..........................................................................................7, 18
20 U.S.C. § 1087(a)(2)............................................................................................21
28 U.S.C. § 157(b).....................................................................................................1
28 U.S.C. § 157(b)(2)(I)............................................................................................1
28 U.S.C. § 158(a).....................................................................................................1
38 U.S.C. § 5301(a)(1)...................................................................................... 20, 21

vi

# JURISDICTIONAL STATEMENT

This Court has jurisdiction, pursuant to 28 U.S.C. § 158(a), over this appeal from the Bankruptcy Court's Memorandum Opinion and Order Denying Dischargeability of Student Loan Debt (Doc. 36), which was entered March 17, 2021. JA 345-75. The Bankruptcy Court had authority to enter final orders on issues deemed "core proceedings" arising in a case under title 11. 28 U.S.C. § 157(b). The determination of the dischargeability of a debt is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I). On March 31 and April 9, 2021, Appellant Hock ("Hock") filed Notices of Appeal. JA 376 & 381.

# ISSUES PRESENTED

I.  Whether the Bankruptcy Court's factual findings that the non-debtor's spouse's Veterans Affairs (VA) disability income should be considered under the first prong of the *Brunner* test in determining whether Hock could maintain a minimum standard of living while paying back her loan are supported by evidence and not clearly erroneous, and the Bankruptcy Court's legal conclusion that Hock failed to prove the first prong of the *Brunner* test that she could not pay back her loan while maintaining a minimal standard of living, is in accord with the law?

II. Whether the Bankruptcy Court's factual findings that Hock has the ability to pay her loans and maintain a minimal standard of living in the future, and that her revenue stream will continue to be available to her in the future, are supported by the evidence and not clearly erroneous, and the Bankruptcy Court's legal conclusion that Hock did not meet the "demanding requirement" of "certainty of hopelessness" of the second *Brunner* factor is in accord with the law?

III.     Whether the Bankruptcy Court's factual findings that Hock did not make good faith efforts to repay her student loans by only making two payments, failing to seriously consider loan consolidation, failing to pursue administrative discharge, and failing to make even minimal efforts to minimize her expenses, are supported by the evidence and not clearly erroneous, and the Bankruptcy Court's legal conclusion based on those factual findings that Hock failed to meet the third prong of the *Brunner* test by failing to demonstrate that she made a good faith effort to repay her debt is in accord with the law?

## STATEMENT OF THE CASE

**1.     While in her sixties, Hock borrows and promises to pay back $102,651 in student loans for her son's education.**

On July 29, 2013, at the age of 63, Hock, a Financial Advisor at Merrill Lynch, who had both a law degree and masters in law, executed an Application and Master Promissory Note ("MPN") for a Federal Direct PLUS Loan, hereinafter "Parent-Plus Loan" or "Loan." JA 144, ¶ 10.   The Loan was for her son Trevor Hock's education at Berklee College of Music in Boston.   As a Parent-Plus Loan, the loan was structured so Hock is solely responsible for repayment.   JA 144, ¶ 10; JA 206).   In her MPN, Hock promised:

> I promise to pay to the ED [United States Department of Education] all loan amounts disbursed under this MPN [Master Promissory Note], plus interest and other charges and fees that may become due as provided in this MPN.

JA 149, para. 22.   Pursuant to the MPN, Hock acknowledged:

> I must repay the full amount of the loans under the MPN, plus accrued interest.   I will repay each loan in monthly installments during a

2

repayment period that begins on the day of the final disbursement under
the loan.

JA 151 (Repayment Section).

Hock's Parent-Plus Loan was processed based only on a credit check and Hock's promise to pay back the Loan. JA 153 (requiring a loan endorser only if the applicant has an adverse credit history). On September 21, 2013, Hock, pursuant to the MPN, received $47,00.00 at 6.41% per annum, and on September 20, 2014, at age 64, Hock requested and received an additional $55,651.00 at 7.21% per annum. JA 145, ¶ 11. Hock's Parent-Plus Loan required repayment within ten years under the Standard Repayment Plan. JA 155.

## 2. Although employed at Merrill Lynch and required to repay her loan in ten years, Hock immediately seeks deferments of her loan payment except for a brief three-month period where she made two payments.

When Hock took out the Loan, she had an impressive educational and work history. She graduated from Brooklyn College, Pepperdine University School of Law, and New York University School of Law with an L.L.M. in tax. JA 206. As a lawyer, she had practiced bankruptcy law and engaged in business litigation.

At the time she took out the Loan, Hock was working as a Financial Adviser at Merrill Lynch. JA 206. Although she was making on average $4,500/month ($54,000 a year) from July 2015 to June 20, 2017 (JA 183), and in 2016, $64,550 in income, and an additional $2,313 from Social Security (JA 40), for a total of

3

$66,863, JA 40, Hock, by her own admission, paid "very little" "probably two payments," JA 206, "less than $3,000," JA 206, in fact a total of only $2,774.52 towards the $102,651 she borrowed. JA 145 ¶ 12.

Rather than making monthly payments as required by the MPN, Hock immediately sought deferment of the loans in the same year that they were taken out, JA 206, and continued to seek deferments since she took out the loans in 2013 except "for a very short time" JA 206, when her son was not in school and she had to make payments.   JA 187.   In fact, the loan has been in deferment status since February 1, 2014, except for a brief three-month period in 2016.   JA 145, ¶ 14.

### 3.    Hock is diagnosed with thyroid cancer, treated, and remains cancer-free.

In 2016, Hock was diagnosed with Stage 3 thyroid cancer.   JA 313, ¶ 5.   In October 2016, she had surgery to remove her thyroid gland, lymph nodes, and parathyroid glands.   JA 313, ¶ 5.   Her recovery was complicated by hypercalcemia. JA 314, ¶ 10.   She began taking Synthoid, a medication that essentially takes the place of the thyroid gland.   JA 313, ¶ 7.   Since her surgery, Hock has been cancer free.   JA 313, ¶ 8.   Hock continued working at Merrill Lynch until June, 2017.   JA 176, 183.

Although Hock believes she is disabled and unemployable, when she asked a doctor to certify that she had a permanent disability that prevented her from working,

the doctor refused to sign the form because, as Hock testified, "she was not willing to put her license on the line by swearing under oath that I could absolutely in no way work." JA 221. Hock did not ask another physician to certify that she was permanently disabled and unable to work. JA 221.

**4. After the surgery and leaving Merrill Lynch, rather than minimizing her expenses to make even minimal loan repayments, Hock and her husband moved into a $375,000 four-bedroom home adjacent to Lake Norman, with a boat dock, leased two luxury vehicles, and lived at an upper income standard with expenditures on nonessential and even luxury expenses.**

In 2018, Hock, rather than making student loan payments, moved into a $375,000 four-bedroom, two and one-half bathroom house, with a deeded boat slip, adjacent to Lake Norman. JA 235-52. The house and related expenses cost $2,974.32 per month. JA 235; 184.

After leaving Merrill Lynch, Hock and her husband leased two Lexus automobiles at a monthly cost of $2,012, which reflects $1,533.28 for lease payments, gas, and registration, $144 for car insurance, and $335 in monthly transportation costs, JA 184, although, as Hock testified, she and her husband "Don't need two cars . . . . We go nowhere." JA 214. Hock also made numerous nonessential and even luxury purchases, including a premium Direct TV package ($259.56 per month), Netflix ($17.15), Sirius XM radio ($21.48), and many others, rather than repay her Loan. JA 254-72.

5

**5.     Hock files for bankruptcy.**

On December 3, 2018, Hock files for bankruptcy, *In re Lynn Hock*, 18-31795 (W.D.N.C. Bankr. 2018), a voluntary Chapter 7 case.   JA 1.   In her summary of assets and liabilities, Hock listed $251,653.24 of total liabilities, which include $152,572.67 in student loan liabilities.   JA 8-9.   With regard to nonpriority unsecured claims, she listed $75,856.17, most of which was credit card debt. JA 29.

Regarding income, Hock listed $1,337 monthly Social Security income, JA 35, and $5,336.67 in monthly income for her husband, which consisted of $1,677 in Social Security, $3,139.67 in VA disability payments, and $520.11 in pension payments.   The total monthly income for the Hocks was $6,673.78, which reflects an annual income of $80,085.36.   JA 35.

On March 5, 2019, the Bankruptcy Court entered the Order of Discharge, JA 71.   During the Chapter 7 bankruptcy proceedings, no assets were administered or property liquidated, although Hock's credit card debt was discharged. JA 71.

**6.     Hock files an adversary proceeding seeking to discharge her Loan.**

On March 1, 2019, Hock files an adversary proceeding alleging that the repayment of the Loan will impose an undue hardship on her.   JA 77, 79.   As of August 17, 2020, Plaintiff's student loan debt held by the Department of Education was $143,581.48—comprised of $118,105.64 in principal and $25,475.84 in accrued

6

interest.   JA 145.

After taking discovery, the parties agreed to a stand down so that Hock might seek an administrative discharge of her student loan debts with the Government. Twice the parties jointly moved for continuances of the case deadlines for six months to allow Hock to seek medical determinations that she was disabled and unemployable and to submit a Discharge Application for Total and Permanent Disability.   JA 89-90; JA 96; JA 101.

After the year-long stay to allow her to seek administrative discharge based on disability, Hock did not pursue that option, and by September 28, 2020, the matter was in court on cross summary judgment motions.   At the conclusion of the hearing, a bench ruling was announced denying both motions.   Thereafter, the parties entered into Joint Stipulations of Facts and Admissibility of Documents, JA 312-21. At a hearing held on January 11, 2021, the two sides agreed that the matter be tried on the same and without live testimony.

**7.     The Bankruptcy Court determines that Hock failed to demonstrate by a preponderance of the evidence that repaying her loan would pose an undue hardship under the three-part *Brunner* test.**

The Bankruptcy Court observed that pursuant to 11 U.S.C. § 523(a)(8), "student loans are dischargeable in bankruptcy only where repayment of the loans places an 'undue hardship' upon the debtor," JA 12, and applied the three-part

*Brunner* test derived from *Brunner v. New York State Higher Educ. Servs. Corp.*, 46

B.R. 752, 756 (S.D.N.Y. 1985), *aff'd*, 831 F.2d 395 (2d Cir. 1987) and as adopted

by the Fourth Circuit in *Frushour v. Educ. Credit Mgmt. Corp.*, 433 F.3d 393, 396

(4th Cir. 2005), which requires that the debtor prove:

> (1)   that the debtor cannot maintain, based on her current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;
>
> (2)   that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans
>
> (3)   that the debtor has made good faith efforts to repay the loans.

JA 356.

The Bankruptcy Court observed that "[t]he burden is on the debtor to

demonstrate, by a preponderance of the evidence, that each of the three prongs is

satisfied."   JA 356.   "If one of the prongs is not shown, the inquiry ends.   The loan

is not discharged."   JA 356.   "Finally, and '[b]ecause Congress selected the word

'undue,' the required hardship under § 523(a)(8) must be more than the usual

hardship that accompanies bankruptcy…. [D]ischargeability of student loans should

be based on a 'certainty of hopelessness.'"   JA 356 (quoting *Frushour*, 433 F.3d at

401).   Furthermore, since the decision of whether or not to borrow for a college

education lies with the individual, it is the student, not the taxpayers, who must

8

accept the consequences of the decision to borrow. JA 11 (quotations and citations omitted).

The Bankruptcy Court rejected Hock's challenge to the *Brunner* test while acknowledging that "the *Brunner* test is an exacting standard" which "was intentional" because "Congress meant for student loan debts to be discharged only in the most dire circumstances." JA 357. The Bankruptcy Court then determined that Hock had failed to prove each of the three *Brunner* factors.

In analyzing the first *Brunner* factor, the Bankruptcy Court determined that Hock failed to prove that she could not, based on her current income and expenses, repay her student loans and maintain a minimal standard of living. The Bankruptcy Court went on to explain other problems with Hock's argument:

> The second problem with Hock's argument is that she is not consistent in how she determines her income and expenses, and thus her net income. When it comes to income, Hock only includes her individual income, $1,423.00 of Social Security Benefits. She ignores her husband's monthly income of $5,559. . . . Hock . . . suggests that this would be improper because her husband is a disabled veteran and most of his income derives from government disability benefits and social security.

> However, it is well settled law that the income of non-debtor spouses must be counted in Section 523(a)(8) cases under *Brunner*. *See, e.g., In re Augustin*, 588 B.R. 141, 150 (Bankr. D. Md. 2018) (citing multiple cases). And it is equally clear that all income sources (wage income, social security, disability and pension benefits) are considered under *Brunner* for Section 523(a)(8) purposes.

9

JA 360-61.

The Bankruptcy Court also pointed out the inconsistency of Hock's argument in which she "counts only her <u>individual</u> income in determining her "disposable income," Hock deducts <u>all of her household's</u> expenses," which "artificially depresses the family's net income and portrays Hock's finances as being substantially worse than they actually are." JA 361. Applying the *Brunner* test, the Bankruptcy Court found that:

> Adjusting Hock's reported household income and expenses to meet the proper legal standard and to reflect all income and expenses, Hock has a household income of $6,982.33 per month or roughly $83,787.96 per year—for a family of two. The required student loan payments on Hock's loan are approximately $1,680 as of February 2021. Thus, if Hock made monthly payments on her student loans, she and her husband would be left with $5,302.33 per month or $63,627.96 per year to support themselves. . . . Obviously, this amount of income is sufficient for two people to maintain a 'minimal' standard of living in Western North Carolina. Many residents of this State make do on less.

JA 361-62. The Bankruptcy Court went on to find that "given this level of income and benefitting from a discharge of her other debts, the only reason Hock cannot pay back her student loans is her desired lifestyle." JA 18.

As required by the first prong of the *Brunner* test, the Bankruptcy Court examined whether Hock could maintain a minimum standard of living while paying back her loans and made the following factual findings:

10

Hock and her husband live in a four bedroom, two-and-a-half-bathroom house, with a deeded boat slip, adjacent to Lake Norman. The home was purchased for $375,000 in 2017. Altogether, the house and related expenses, cost Hock a minimum of $2,974.32 per month. . . . Significantly, the home was purchased after Hock (1) took out her student loans, (2) underwent thyroid surgery and cancer treatment, and (3) ceased working as a financial advisor at Merrill Lynch. *Id.* at 20.

Additionally, the Hocks drive two Lexus automobiles, at a monthly cost of $2,012 (lease payments, gas and registration $1,533.28; car insurance, $144 and monthly transportation costs of $335). *Id.* at 21. . . . Hock offers no explanation why owning and operating two luxury cars is necessary for her household to maintain a minimal standard of living, given that both persons are either retired or disabled. It is significant that these vehicles were leased after Hock's medical conditions and unemployment occurred. *See Perkins v. Vermont Student Assistance Corp.,* 11 B.R. 160, 161 (Bankr. D. Vt. 1980) (buying a new car was a "self [-]imposed hardship").

Then there is entertainment. Hock enjoys a premium Direct TV package costing $259.56 per month, inclusive of add-ons ($50.99 for HBO, $4.99 for the movies extra pack, $25 for an advanced receiver, and $14 for a two-client subscription service). She also pays monthly for Netflix ($17.15), Sirius XM radio ($21.48) the New York Times ($4.29), and Disney Plus subscriptions ($7.50) (totaling $50.42). . . . Some level of entertainment is appropriate under *Brunner*, but here the monthly expenditures are excessive. . . . In short, Hock's lifestyle is well beyond a "minimal standard of living." It is better described as an upper income standard, containing many nonessential, and even luxury, expenses.

JA 362-63. The Bankruptcy Court looked at an example of how "Hock could rein in her household expenses so as to both live and provide for a $1,680 student loan payment," JA 364, and found:

11

Hock is subsisting well above the *Brunner* "minimal" standard. That "minimal standard of living" does not require a debtor to live in squalor. However, it also does not allow a debtor to live "above his means" and then obtain a discharge of his student loan debt by merely showing that his expenses consume virtually all of his income. *In re Waterhouse*, 333 B.R. at 111[1] (internal citations omitted). . . . Hock fails to meet the first *Brunner* factor.

JA 365-66.

The Bankruptcy Court also found that Hock failed to meet the second *Brunner* factor – that additional circumstances exist indicating that the state of affairs is likely to persist for a significant portion of the repayment period of the Loan. The Bankruptcy Court observed that the "second *Brunner* factor is 'prospective in nature and looks for exceptional circumstances beyond the debtor's current situation,' is 'the heart of the *Brunner* test,' and is a 'demanding requirement,' which will only be found in 'rare circumstances.' JA 366-68 (quoting *Frushour*, 433 F.3d at 401). The Bankruptcy Court made the following findings of fact:

On this record, it is far from clear whether Hock will be able to work going forward. Certainly, she has experienced serious health events. But Hock is now cancer free, and by her own admission, the side effects from her thyroid replacement medication are "minor, the effects of her hypercalcemia are improving, and she is currently able to maintain focus until 2:00 pm in the afternoon. Add to that her extensive education, work history, and the fact that the jobs for which Hock is qualified do not require physical labor. On this record, we can neither conclude that Hock will be able to improve her income prospects over the remainder of the repayment period for her loans, nor can we gainsay

---

[1] *Educ. Credit Mgmt. Corp. v. Waterhouse*, 333 B.R. 103, 111 (W.D.N.C. 2005).

it. . . . Importantly, Hock cannot rely on her age alone or the fact that she obtained the loans late in life as an additional circumstance. . . . Hock was fully aware of her age when she took out the loans . . . but choose to defer them . . . . Here, neither age nor health prevents Hock from having a <u>current</u> household income of $6,982.33. Hock's household income is entirely derived from social security, disability and pension income. These revenues will continue irrespective of Hock's ability to work. Since Hock presently has the present ability to pay her loans and maintain a minimal standard of living, and since that income will continue to be available to her irrespective of her ability to work, Hock fails the second *Brunner* prong.

JA 367-68.

Turning to the third *Brunner* factor, the Bankruptcy Court rejected Hock's claims that she made a good faith attempt to repay her Loans, finding:

Hock fails the third prong of the *Brunner* test. She has failed to make more than minimal efforts to pay down her student debt; failed to actively pursue and complete an IRC application, the only repayment plan for which she is currently eligible; failed to actively pursue and complete a TPD discharge application outside of one doctor's visit; and failed to minimize her expenses. These facts, taken as a whole, show that Hock has not acted in good faith to repay her student loans.

JA 375.

In conclusion, the Bankruptcy Court held that "Hock has failed to demonstrate any of the three factors, and her action fails. The evidence drawn from Hock's filed pleadings, discovery responses, deposition, stipulated facts and admitted documents demonstrates that she cannot carry her burden under <u>any</u> of the three prongs." JA 375.

13

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court applied the three-prong *Brunner* test. With regard to each prong, the Bankruptcy Court's factual findings should be reviewed for clear error and the legal conclusions derived from those factual underpinnings, *de novo*.

The Bankruptcy Court's factual findings that the non-debtor's spouse's Veterans Affairs (VA) disability income should be considered under the first prong of the *Brunner* test in determining whether Hock could maintain a minimum standard of living while paying back her loan are supported by evidence and not clearly erroneous. The Bankruptcy Court's legal conclusion that Hock failed to prove the first prong of the *Brunner* test that she could not pay back her loan while maintaining a minimal standard of living is in accord with the law.

The Bankruptcy Court's factual findings that Hock has the ability to pay her loans and maintain a minimal standard of living in the future, and that her revenue stream will continue to be available to her in the future, is supported by the evidence and not clearly erroneous. The Bankruptcy Court's legal conclusion that Hock did not meet the "demanding requirement" of "certainty of hopelessness" of the second *Brunner* factor is in accord with the law.

The Bankruptcy Court's factual findings that Hock did not make good faith efforts to repay her student loans by only making two payments, failing to seriously

14

consider loan consolidation, failing to pursue administrative discharge, and failing to make even minimal efforts to minimize her expenses, are supported by evidence and not clearly erroneous. The Bankruptcy Court's legal conclusion based on those factual findings, that Hock failed to meet the third prong of the *Brunner* test by failing to demonstrate that she made a good faith effort to repay her debt, is in accord with the law.

Accordingly, the Bankruptcy Court determined that Hock failed to carry her burden on each of the three elements of the *Brunner* test. Because a debtor seeking discharge of their loan must prove each of the three elements by a preponderance of the evidence, the Bankruptcy Court denied discharge of the Loan. This Court should affirm the Bankruptcy Court's decision.

## ARGUMENT

### I. Standard of Review

"Whether a debtor has met the undue hardship standard is a legal conclusion that is based on the debtor's individual factual circumstances." *In re Frushour*, 433 F.3d at 398. "[T]hese types of questions are reviewed "under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining de novo the legal conclusions derived from those facts." *In re Frushour*, 433 F.3d at 398. The Court, therefore, reviews "de novo the

15

determination of whether a debtor has met the undue hardship standard, and . . . the factual underpinnings of that legal conclusion for clear error." *In re Frushour*, 433 F.3d at 398.

"Findings of fact are clearly erroneous 'when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *McGahren v. First Citizens Bank & Trust Co. (In re Weiss),* 111 F.3d 1159, 1166 (4th Cir.1997) (*citing Green v. Staples (In re Green),* 934 F.2d 568, 570 (4th Cir.1991)). As the Supreme Court has stated:

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
>
> Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74 (1985).

### A. Discussion

1. <u>The Bankruptcy Court correctly applied the *Brunner* Test as adopted by the Fourth Circuit.</u>

Hock argues in Section V of her brief that this Court should recognize "the tectonic shift in the way *Brunner* has been interpreted by courts," Appellant Brief, p. 29, and follow three bankruptcy court decisions in applying a "kinder, gentler

interpretation of undue hardship under *Brunner*." Appellant Brief, p. 33. This Court, however, like the Bankruptcy Court, must follow the *Brunner* test as adopted by the Fourth Circuit in *Frushour*, 433 F.3d at 400. As the Bankruptcy Court observed:

> And since the *Brunner* test has been adopted by the Fourth Circuit (in *Frushour*) as the applicable standard by which to consider Section 523(a)(8) student loan dischargeability requests, it is also controlling law. This bankruptcy court is not at liberty to fashion another test. Hock's case must be considered under *Brunner*.

JA 357. Accordingly, Hock's argument that this Court look at bankruptcy court decisions should be rejected as contrary to established Fourth Circuit precedent.

Moreover, the three bankruptcy court decisions cited by Hock applied the *Brunner* test. Specifically, *In re Randall*, 628 B.R. 772, 784 (Bankr. D. Md. 2021) acknowledged that "the Fourth Circuit, ha[s] adopted the test developed by the Second Circuit for this purpose; a test commonly referred to as the *Brunner* test," and applied that test. Similarly, in In re Wolfson, No. 19-11618 (LSS), 2022 WL 5055468, at *6 (Bankr. D. Del. Jan. 14, 2022), the court stated that "The *Brunner* test is the "definitive, exclusive authority" that courts must use to make the undue hardship determination, and '[e]quitable concerns or other extraneous factors not contemplated by the *Brunner* framework' should not be considered." Finally, in *In re Wheat*, No. 18-30745-WRS, 2022 WL 243221, at *2 (Bankr. M.D. Ala. Jan. 25,

17

2022) the court acknowledged "the *Brunner* test has been the standard in this Circuit for determining undue hardship under 11 U.S.C. § 523(a)(8)."  What distinguished these cases most is that the debtors in those cases <u>proved</u> undue hardship under the *Brunner* test, something Hock failed to do.

> 2.   <u>The Bankruptcy Court's factual findings that the non-debtor's spouse's Veterans Affairs (VA) disability income should be considered under the first prong of the *Brunner* test in determining whether Hock could maintain a minimum standard of living while paying back her loan are supported by evidence and not clearly erroneous, and the Bankruptcy Court's legal conclusion that Hock failed to prove the first prong of the *Brunner* test that she could not pay back her loan while maintaining a minimal standard of living is in accord with the law.</u>

Hock argues that her husband's VA disability income should not be considered in determining whether she could maintain a minimal standard of living and still repay her loans.   Appellant Brief, p. 18.   The Bankruptcy Court in addressing the issue stated:

> The second problem with Hock's argument is that she is not consistent in how she determines her income and expenses, and thus her net income.   When it comes to income, Hock only includes her individual income, $1,423.00 of Social Security Benefits.   She ignores her husband's monthly income of $5,559.   Hock says that including Mr. Hock's income in the calculation would "stray wildly from the plain language of Section 523(a)(8)." . . . Hock also suggests that this would be improper because her husband is a disabled veteran and most of his income derives from government disability benefits and social security. *Id.*

> However, it is well settled law that the income of non-debtor spouses must be counted in Section 523(a)(8) cases under *Brunner*. <u>See, e.g.,</u> In

re Augustin, 588 B.R. 141, 150 (Bankr. D. Md. 2018) (citing multiple cases). And it is equally clear that all income sources (wage income, social security, disability and pension benefits) are considered under *Brunner* for Section 523(a)(8) purposes.[14]

JA 360-61.

Hock provides no case law in support of her position that the income of the non-debtor spouse should not be considered under Brunner. The Bankruptcy Court correctly observed that "it is well settled law that the income of non-debtor spouses must be counted in Section 523(a)(8) cases under *Brunner*." JA 361. The Bankruptcy Court cited *In re Augustin*, 588 B.R. 141, 150–51 (Bankr. D. Md. 2018) which provided:

> The DOE contends the court should consider total household income and expenses. This is not a novel issue, and the courts within the Fourth Circuit have determined that family income, even that of non-debtor spouses, should be included in the analysis. *In re Gill*, 326 B.R. 611, 626 (Bankr. E.D. Va. 2005) (citing. *Educ. Credit Mgmt. Corp. v. Buchanan (In re Buchanan)*, 276 B.R. 744, 751 (N.D.W. Va. 2002) (citing *Virginia State Educ. Assistance Auth. v. Dillon*, 189 B.R. 382, 385 (W.D. Va. 1995); *In re Murphy,* 305 B.R. at 794–5; *White v. U.S. Dep't of Educ. (In re White)*, 243 B.R. 498, 509 (Bankr. N.D. Ala. 1999) ). In fact, the majority of courts have considered the earnings of both the debtor and spouse for evaluating the debtor's lifestyle. *Id.* (citing *In re White*, 243 B.R. at 509, n.9 (collecting over 40 cases); *see also Sweeney v. Educ. Credit Mgmt. Corp. (In re Sweeney)*, 304 B.R. 360, 362–63 (D. Neb.2002) ("Overwhelming authority requires that a court consider the spouse's income. This court finds no published opinion of a court that holds to the contrary.") ).

*In re Augustin*, 588 B.R. 141, 150–51 (Bankr. D. Md. 2018).

19

As the Bankruptcy Court held, "[c]ourts within the jurisdiction of the Fourth Circuit Court of Appeals have held that family income must be the measure of the income calculation commanded by the first *Brunner* prong." *In re Gill*, 326 B.R. 611, 626 (Bankr. E.D. Va. 2005); *In re Murphy*, 305 B.R. 780, 793 (Bankr. E.D. Va. 2004) ("Courts within the jurisdiction of the Fourth Circuit Court of Appeals that have considered this question have concluded that family income must be the measure of the income calculation commanded by the first *Brunner* prong."); *Educ. Credit Mgmt. Corp. v. Waterhouse*, 333 B.R. 103, 109 (W.D.N.C. 2005) ("A majority of courts have determined that it is proper to consider the economics of the debtor and the debtor's spouse, as a family unit, when determining ability to pay."); *Murphy v. CEO/Manager, Sallie Mae (In re Murphy),* 305 B.R. 780, 795 (Bankr.E.D.Va. 2004).

Hock cites 38 U.S.C. § 5301(a)(1) and argues that the Bankruptcy Court should not have considered her husband's VA disability payments in determining whether Hock has met *Brunner's* first prong. Section 5301(a)(1) provides:

> (a)(1) Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The

preceding sentence shall not apply to claims of the United States arising under such laws . . . .

38 U.S.C. § 5301(a)(1). Hock's argument fails because the United States is not seeking to execute on Mr. Hock's assets by "attachment, levy, or seizure by or under any legal or equitable process . . . ." To the contrary, Hock is seeking to discharge her student loan, and the Bankruptcy Court was required by *Brunner* to determine whether she and her husband could maintain a minimum standard of living, which the Bankruptcy Court found that they could. Additionally, the second sentence of section 5301(a)(1) states that "[t]he preceding sentence shall not apply to claims of the United States . . . ."[2]

The Eighth Circuit decision, *In re Cumberworth*, 347 B.R. 652, 657-58 (8th Cir. 2006), supports the Bankruptcy Court's decision. In that case, the Eighth Circuit considered the issue of whether the non-borrower's VA disability income should be considered under the *Brunner* test and observed as to the VA disability income, "Both parties and the bankruptcy court agree that generally, a bankruptcy court must include the non-borrower spouse's income in its undue hardship

---

[2] Hock also cites 20 U.S.C. § 1087(a)(2); however, Section 1087(a)(2) is inapplicable because it applies to veterans seeking discharge, not to the spouse of the veteran seeking discharge of her Loan. Section 1087dd(c)(1)(F)(iv), Title 10, United States Code, also is inapplicable, as is the Executive Order referenced by Hock, because both apply to situations in which the borrower is a disabled veteran.

analysis." *In re Cumberworth*, 347 B.R. at 657.[3]   The issue on appeal was whether

the bankruptcy court erred in excluding the VA disability income because a fiduciary

had been appointed to represent the non-borrowing spouse veteran, and the fiduciary

testified that if the veteran had to be placed in a long-term care facility operated by

the VA, the VA would likely "require [the veteran] to expend all of his income to

cover his expenses."   *In re Cumberworth*, 347 B.R. at 658.   Based on the evidence

presented by the debtor, the bankruptcy court concluded that the veteran "is beset

with a multitude of mental and physical ailments and there is certainly a reasonable

probability that James may need long-term care at some point in the future.   Thus,

the evidence in the record suggests that there is a reasonable likelihood that James

will consume all of his income at some point in the future to pay for his own care."

*In re Cumberworth*, 347 B.R. at 658.   The issue for the Eighth Circuit was whether

the bankruptcy court's evidentiary decision that the veteran's VA disability

---

[3] The Eighth Circuit cites *In re Sweeney*, 304 B.R. 360, 362–63 (D. Neb. 2002), which states:

> In this court's view, no evidence can change the requirement that a court must consider a spouse's income in deciding whether a student loan constitutes an undue burden. Overwhelming authority requires that a court consider the spouse's income.   This court finds no published opinion of a court that holds to the contrary.   The court in *White v. United States Department of Education, et al.,* 243 B.R. 498 (Bankr.N.D.Ala.1999) cites no less than forty-nine (49) cases in which courts have held that a court must consider the earnings of both the debtor and his spouse in evaluating whether a student loan creates an undue hardship.   *See White* at n. 9.   For reasons of sound authority and sound public policy, the court must view undue hardship in light of the total income of the family.

*In re Sweeney*, 304 B.R. 360, 362–63 (D. Neb. 2002).

payments would need to be used for the veteran's medical care was clearly erroneous.   The Eighth Circuit held:

> Our review of this record does not leave us with a definite and firm conviction that it is reasonably likely that Epping will be able to use James' disability income to pay Leah's debt on the Student Loans anytime in the near future.   Accordingly, we cannot find that the bankruptcy court's factual determination is clearly erroneous.

*In re Cumberworth*, 347 B.R. at 658.

In this case, Hock, under penalty of perjury, listed her husband's VA disability in her Chapter 7 filings.   JA 35.   Evidence supported the Bankruptcy Court's reliance on the non-debtor's spouse's VA disability income.   In contrast to *In re Cumberworth*, 347 B.R. at 658, Hock produced no evidence that her husband's financial affairs were managed by a fiduciary and that her husband had a reasonable probability of going into long-term care that would consume all of his VA disability income.   The Bankruptcy Court's factual finding that Mr. Hock's VA disability income was available for consideration under the first *Brunner* prong is supported by evidence and was not clearly erroneous.

        3.    <u>The Bankruptcy Court's factual findings that Hock has the ability to pay her loans and maintain a minimal standard of living in the future, and that her revenue stream will continue to be available to her in the future, is supported by the evidence and not clearly erroneous, and the Bankruptcy Court's legal conclusion that Hock did not meet the "demanding requirement" of "certainty of hopelessness" of the second *Brunner* factor is in accord with the law.</u>

In Section III of her brief, Hock argues that the Bankruptcy Court erred in making the factual finding:

> Here, neither age nor health prevents Hock from having a <u>current</u> household income of $6,982.33. Hock's household income is entirely derived from social security, disability and pension income. These revenues will continue irrespective of Hock's ability to work. Since Hock presently has the present ability to pay her loans and maintain a minimal standard of living, and since that income will continue to be available to her irrespective of her ability to work, Hock fails the second *Brunner* prong.

JA 368. Hock characterized the Bankruptcy Court's factual findings as a "prophecy," that "expenses could well skyrocket during the coming years," that "the Bankruptcy Court turned a blind eye to the probability of increased medical and long-term care expenses," that "in the case that the VDA will end if, God forbid, Appellant's husband passes away or if the couple's marriage dissolves," that the Social Security Administration predicts that its trust funds reserves are projected to become exhausted in 2037," that the "Bankruptcy Court ignored all possible worst-case scenarios, and that it "would require a Ouija Board or a Delorean equipped to go 'Back to the Future' to say with certainty sufficient to satisfy the Court …." Appellant's Brief, pp 24-26. Although Hock speculates about these worst-case scenarios, she failed to prove that any of them were more likely than not to occur.

As the Bankruptcy Court observed, "[t]he second *Brunner* factor is "prospective in nature and looks for exceptional circumstances beyond the debtor's current situation," is "the heart of the *Brunner* test," and is a "demanding requirement" which will only be found in "rare circumstances." *Frushour*, 433 F.3d at 401. JA 66-67. Hock's speculations are not evidence, nor do they demonstrate that the Bankruptcy Court's factual findings were clearly erroneous nor its legal conclusion incorrect. Hock failed to meet *Brunner's* second factor, which is "a 'demanding requirement' . . . and necessitates that a 'certainty of hopelessness' exists that the debtor will not be able to repay the student loans . . . . *In re Frushour*, 433 F.3d at 401.

        4.   <u>The Bankruptcy Court's factual findings that Hock did not make good faith efforts to repay her student loans by only making two payments, failing to seriously consider loan consolidation, failing to pursue administrative discharge, and failing to make even minimal efforts to minimize her expenses are supported by evidence and not clearly erroneous, and the Bankruptcy Court's legal conclusion based on those factual findings that Hock failed to meet the third prong of the *Brunner* test by failing to demonstrate that she made a good faith effort to repay her debt is in accord with the law.</u>

Hock's challenges to the Bankruptcy Court's decision regarding the third prong of the *Brunner* test, and argues that the Bankruptcy Court erred in determining that "the third prong of the *Brunner* test cannot be met without applying for Direct

Consolidation and entering into an ICR plan as a prerequisite to discharge of the loans . . . . " Appellant Brief, p. 26.

As an initial matter, the Bankruptcy Court did not say that the third prong of the *Brunner* test could not be met without applying for Direct Consolidation and entering into an ICR. Rather, the Bankruptcy Court stated that seeking consolidation was a "component" of the third prong of the *Brunner* test:

> A debtor's attempt (or lack thereof) to explore loan consolidation options or obtain an administrative discharge is considered under the due hardship analysis of § 523(a)(8). *See Frushour*, 433 F.3d at 402 . . . .

> Hock suggests in her brief that she is not required to 'take out additional loans' as a precondition to obtaining a discharge of her student loan debts. True. However, in this Circuit, as most, the fact that the debt Hock has failed to consolidate her loans and seek ICR or other like options is an important component of the good faith inquiry. . . .

> For example, in *Frushour*, the Fourth Circuit held that the debtor failed to establish good faith efforts to repay his loans where the debtor refused to "seriously consider the income contingent plan under the William D. Ford Direct Loan Program" and "refuse[d] to take [this] simple step that would have allowed him to fulfill his commitments in a manageable way." 433 F.3d at 403.

> Hock has likewise failed to consider ICR or take the simple steps that could— at present—reduce her monthly payment to zero. She cannot, therefore, be credited with good faith efforts.

JA 372. The Bankruptcy Court correctly stated the law that seeking loan consolidation was a "component" of the good faith inquiry. *Educ. Credit Mgmt. Corp. v. Mosko*, 515 F.3d at 314, 326 (4th Circuit 2008).("We have stated that

26

seeking out loan consolidation options is 'an important component of the good-faith inquiry' because such efforts demonstrate that the debtors take their debts seriously and are doing their utmost to repay them despite their unfortunate circumstances."); *Frushour* 433 F.3d at 402 ("The debtor's effort to seek out loan consolidation options that make the debt less onerous is an important component of the good-faith inquiry.").

Second, the Bankruptcy Court's factual finding that Hock "failed to seriously pursue loan consolidation or income-based repayment options," JA 370, is supported by evidence and not clearly erroneous. As the Bankruptcy Court explained:

> Hock admits she has not applied for ICR. (Doc. No. 19-1, Ex. 2, p. 20). In her responses to the Government's Requests for Admissions, she claims she researched the ICR program and "made the substantive decision that the program did not work well for her circumstances." *Id*. Her deposition testimony reveals that this research was, in her own words, "just minor" and it would have been "a Google search probably, if anything" . . . .

JA 371. The Bankruptcy Court based its factual finding on Hock's deposition testimony that her research was "just minor" -- "a Google search probably, if anything." JA 219. The cursory effort that Hock applied to considering loan consolidation demonstrates that Hock did not take her loan obligations seriously. Accordingly, "Hock has likewise failed to consider ICR or take the simple steps that

27

could—at present—reduce her monthly payment to zero.   She cannot, therefore, be credited with good faith efforts."   JA 372.

In addition to Hock failing to establish that the Bankruptcy Court's factual finding was clearly erroneous, Hock ignores other factual findings that the Bankruptcy Court made regarding the third prong of the *Brunner* test, specifically:

> But, these assertions of good faith are belied by the fact that Hock has (1) only made two payments on her loans, (2) failed to seriously pursue loan consolidation or income-based repayment options, (3) failed to pursue an administrative disability discharge that could be available to her, and (4) failed to make even minimal efforts to minimize her expenses.

JA 369.   In summary, the Bankruptcy Court correctly found that Hock failed to prove the third prong of the *Brunner* test:

> She has failed to make more than minimal efforts to pay down her student debt; failed to actively pursue and complete an IRC application, the only repayment plan for which she is currently eligible; failed to actively pursue and complete a TPD discharge application outside of one doctor's visit; and failed to minimize her expenses.   These facts, taken as a whole, show that Hock has not acted in good faith to repay her student loans.

JA 375.   Because Hock failed to demonstrate that the Bankruptcy Court's factual findings were clearly erroneous and failed to show that the Bankruptcy Court applied an incorrect legal standard, Hock failed to carry her burden of proving that she had made a good faith effort to repay her loans.   Hock's failure to prove each of the

three *Brunner* prongs provides three separate bases for affirming the Bankruptcy Court's decision.

## CONCLUSION

For the foregoing reasons and the factual findings and reasoning set forth in the Bankruptcy Court's decision, the Court should affirm the Bankruptcy Court's decision.

Respectfully submitted, this the 1st day of September, 2023.

DENA J. KING
UNITED STATES ATTORNEY

s/Gill P. Beck
GILL P. BECK
NC Bar Number #13175
Assistant United States Attorney
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Telephone: (828) 271-4661
Fax: (828) 271-4670
E-mail: gill.beck@usdoj.gov

29

## REQUEST FOR DECISION ON THE BRIEFS
## WITHOUT ORAL ARGUMENT

The United States does not believe that oral argument will assist the Court in any material way and requests that this appeal be decided on the briefs.

## CERTIFICATE OF COMPLIANCE

1.      This brief has been prepared using Microsoft Word 2010, Times New Roman, 14 point typeface.

2.      EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains  7,582  words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.   If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

s/Gill P. Beck
Assistant United States Attorney
USAO Asheville, NC

## CERTIFICATE OF SERVICE

I CERTIFY that on the 31st day of August, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served on the Appellant/Plaintiff by mailing a copy thereof, first class mail, postage prepaid, and properly addressed to:

Lynn Karen Hock, *pro se*
21447 Harken Drive
Cornelius, NC 28031

s/Gill P. Beck
Assistant United States Attorney
USAO Asheville, NC