UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-134-MOC

| | |
|---|---|
| LYNN KAREN HOCK, ) | |
| ) | |
| Appellant, pro se, ) | |
| vs. ) | |
| ) | **ORDER** |
| U.S. DEPARTMENT OF EDUCATION, ) | |
| ) | |
| Appellee. ) | |

**THIS MATTER** is before the Court on an appeal from the United States Bankruptcy Court for the Western District of North Carolina, filed by Lynn Karen Hock on March 31, 2021. (Doc. No. 1). Hock appeals the Bankruptcy Court's decision that her student loans were not dischargeable as an undue hardship under Section 523(a)(8) of the Bankruptcy Code.

I. BACKGROUND

On July 29, 2013, at the age of 63, Hock, a Financial Advisor at Merrill Lynch, who has both a law degree and masters in law, executed an Application and Master Promissory Note ("MPN") for a Federal Direct PLUS Loan, hereinafter "Parent-Plus Loan" or "Loan." (JA 144, ¶ 10). The Loan was for her son Trevor Hock's education at Berklee College of Music in Boston. As a Parent-Plus Loan, the loan was structured so Hock is solely responsible for repayment. (JA 144, ¶ 10; JA 206). In her MPN, Hock promised:

> I promise to pay to the ED [United States Department of Education] all loan amounts disbursed under this MPN [Master Promissory Note], plus interest and other charges and fees that may become due as provided in this MPN.

(JA 149, ¶ 22). Pursuant to the MPN, Hock acknowledged:

> I must repay the full amount of the loans under the MPN, plus accrued interest. I

> will repay each loan in monthly installments during a repayment period that
> begins on the day of the final disbursement under the loan.

(JA 151 (Repayment Section)).

Hock's Parent-Plus Loan was processed based only on a credit check and Hock's promise to pay back the Loan. (JA 153 (requiring a loan endorser only if the applicant has an adverse credit history)). On September 21, 2013, Hock, pursuant to the MPN, received $47,000.00 at 6.41% per annum, and on September 20, 2014, at age 64, Hock requested and received an additional $55,651.00 at 7.21% per annum. (JA 145, ¶ 11). Hock's Parent-Plus Loan required repayment within ten years under the Standard Repayment Plan. (JA 155).

When Hock took out the Loan, she had an impressive educational and work history. She graduated from Brooklyn College, Pepperdine University School of Law, and New York University School of Law with an L.L.M. in tax law. (JA 206). As a lawyer, she had practiced bankruptcy law and business litigation. When she took out the Loan, Hock was working as a Financial Adviser at Merrill Lynch. (JA 206). She was making on average $4,500/month ($54,000 a year) from July 2015 to June 20, 2017. (JA 183). In 2016, she made $64,550 in income, and an additional $2,313 from Social Security (JA 40), for a total of $66,863. (JA 40). Hock, however, admits that she paid "very little," "probably two payments," (JA 206), "less than $3,000," (JA 206), towards the $102,651 she borrowed. (JA 145 ¶ 12). In fact, Hock paid a total of only $2,774.52.

Rather than making monthly payments as required by the MPN, Hock immediately sought deferral of the loans in the same year she took them out and continued to seek deferrals except "for a very short time," (JA 206), when her son was not in school and she had to make payments. (JA 187). In fact, the loan has been in deferment status since February 1, 2014, except

-2-

for a brief three-month period in 2016. (JA 145, ¶ 14).

In 2016, Hock was diagnosed with Stage 3 thyroid cancer. (JA 313, ¶ 5). In October 2016, she had surgery to remove her thyroid gland, lymph nodes, and parathyroid glands. (JA 313, ¶ 5). Her recovery was complicated by hypercalcemia. (JA 314, ¶ 10). She began taking Synthroid, a medication that essentially takes the place of the thyroid gland. (JA 313, ¶ 7). Since her surgery, Hock has been cancer free. (JA 313, ¶ 8). Hock continued working at Merrill Lynch until June 2017. (JA 176, 183).

Hock maintains that she is disabled and unemployable. But when she asked a doctor to certify that she had a permanent disability that prevented her from working, the doctor refused to sign the form because, as Hock testified, "she was not willing to put her license on the line by swearing under oath that I could absolutely in no way work." (JA 221). Hock did not ask another physician to certify that she was permanently disabled and unable to work. (JA 221).

In 2018, Hock moved into a $375,000 four-bedroom, two and one-half bathroom house, with a deeded boat slip, adjacent to Lake Norman. (JA 235–52). The house and related expenses cost $2,974.32 per month. (JA 235; 184). After leaving Merrill Lynch, Hock and her husband leased two Lexus automobiles at a monthly cost of $2,012, which reflects $1,533.28 for lease payments, gas, and registration, $144 for car insurance, and $335 in monthly transportation costs. (JA 184). Hock testified, however, that she and her husband "[d]on't need two cars . . . . We go nowhere." (JA 214). Hock also made numerous nonessential and luxury purchases, including a premium Direct TV package ($259.56 per month), Netflix ($17.15 per month), Sirius XM radio ($21.48 per month), rather than repay the Loan. (JA 254–72).

On December 3, 2018, Hock filed for bankruptcy under Chapter 7 of the Bankruptcy

Code. In re Lynn Hock, 18-31795 (W.D.N.C. Bankr. 2018). (JA 1). In her summary of assets and liabilities, Hock listed $251,653.24 of total liabilities, including $152,572.67 in student loan liabilities. (JA 8–9). Hock listed $75,856.17 in nonpriority unsecured claims, most of which was credit card debt. (JA 29).

Hock listed $1,337 monthly Social Security income, (JA 35), and $5,336.67 in monthly income for her husband, which consisted of $1,677 in Social Security, $3,139.67 in VA disability payments, and $520.11 in pension payments. The total monthly income for Hock and her husband was $6,673.78, which reflects an annual income of $80,085.36. (JA 35).

On March 5, 2019, the Bankruptcy Court entered the Order of Discharge. (JA 71). During the Chapter 7 bankruptcy proceedings, no assets were administered or property liquidated, although Hock's credit card debt was discharged. (JA 71).

On March 1, 2019, Hock filed an adversary proceeding, alleging that the repayment of the Loan will impose an undue hardship on her. (JA 77, 79). As of August 17, 2020, Plaintiff's student loan debt held by the Department of Education totaled $143,581.48—$118,105.64 in principal and $25,475.84 in accrued interest. (JA 145). Following discovery, the parties agreed to a stand down so that Hock could seek an administrative discharge of her student loan debts from the Government. The parties twice moved jointly for six-month continuances of the case deadlines to allow Hock to seek medical determinations that she was disabled and unemployable and to submit a Discharge Application for Total and Permanent Disability. (JA 89–90; 96; 101). After the year-long stay to allow her to seek administrative discharge based on disability, Hock did not pursue that option, and by September 28, 2020, the matter was back in court on cross motions for summary judgment. The Court denied both motions from the bench. Thereafter, the

parties filed Joint Stipulations of Facts and Admissibility of Documents. (JA 312–21). At a hearing on January 11, 2021, the two sides agreed that the matter be tried that day without live testimony.

The Bankruptcy Court observed that pursuant to 11 U.S.C. § 523(a)(8), "student loans are dischargeable in bankruptcy only where repayment of the loans places an 'undue hardship' upon the debtor." (JA 12). The Court applied the three-part test derived from Brunner v. New York State Higher Educ. Servs. Corp., 46 B.R. 752, 756 (S.D.N.Y. 1985), aff'd, 831 F.2d 395 (2d Cir. 1987), as adopted by the Fourth Circuit in Frushour v. Educ. Credit Mgmt. Corp., 433 F.3d 393, 396 (4th Cir. 2005). The Brunner test requires that the debtor prove:

> (1) that the debtor cannot maintain, based on her current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans;
>
> (3) that the debtor has made good faith efforts to repay the loans.

(JA 356). The Bankruptcy Court observed that "[t]he burden is on the debtor to demonstrate, by a preponderance of the evidence, that each of the three prongs is satisfied." (JA 356). "If one of the prongs is not shown, the inquiry ends. The loan is not discharged." (JA 356). "Finally, and '[b]ecause Congress selected the word 'undue,' the required hardship under § 523(a)(8) must be more than the usual hardship that accompanies bankruptcy…. [D]ischargeability of student loans should be based on a 'certainty of hopelessness.'" (JA 356 (quoting Frushour, 433 F.3d at 401)). The Bankruptcy Court further noted that "[s]ince the decision of whether to borrow for a college education lies with the individual, it is the student, not the taxpayers, who must accept the consequences of the decision to borrow." (JA 355 (quotations and citations omitted)).

The Bankruptcy Court rejected Hock's challenge to the Brunner test, acknowledging that "the Brunner test is an exacting standard" because "Congress meant for student loan debts to be discharged only in the most dire circumstances." (JA 357). The Bankruptcy Court then determined that Hock had failed to prove each of the three Brunner factors. Regarding the first Brunner factor, the Bankruptcy Court determined that Hock failed to prove that she could not, based on her current income and expenses, repay her student loans and maintain a minimal standard of living. The Bankruptcy Court went on to explain other problems with Hock's argument:

> The second problem with Hock's argument is that she is not consistent in how she determines her income and expenses, and thus her net income. When it comes to income, Hock only includes her individual income, $1,423.00 of Social Security Benefits. She ignores her husband's monthly income of $5,559. . . . Hock . . . suggests that this would be improper because her husband is a disabled veteran and most of his income derives from government disability benefits and social security.
>
> However, it is well settled law that the income of non-debtor spouses must be counted in Section 523(a)(8) cases under Brunner. See, e.g., In re Augustin, 588 B.R. 141, 150 (Bankr. D. Md. 2018) (citing multiple cases). And it is equally clear that all income sources (wage income, social security, disability and pension benefits) are considered under Brunner for Section 523(a)(8) purposes.

(JA 360–61). The Bankruptcy Court also highlighted the inconsistency of Hock's argument, which "counts only her individual income in determining her "disposable income," and "deducts all of her household's expenses," which "artificially depresses the family's net income and portrays Hock's finances as being substantially worse than they actually are." (JA 361) (emphasis added). Applying the Brunner test, the Bankruptcy Court found that:

> Adjusting Hock's reported household income and expenses to meet the proper legal standard and to reflect all income and expenses, Hock has a household income of $6,982.33 per month or roughly $83,787.96 per year—for a family of two. The required student loan payments on Hock's loan are approximately

-6-

Case 3:21-cv-00134-MOC   Document 30   Filed 09/28/23   Page 6 of 11

> $1,680 as of February 2021. Thus, if Hock made monthly payments on her student loans, she and her husband would be left with $5,302.33 per month or $63,627.96 per year to support themselves. . . . Obviously, this amount of income is sufficient for two people to maintain a 'minimal' standard of living in Western North Carolina. Many residents of this State make do on less.

(JA 361–62). The Bankruptcy Court went on to find that "given this level of income and benefitting from a discharge of her other debts, the only reason Hock cannot pay back her student loans is her desired lifestyle." (JA 18).

As required by the first prong of the Brunner test, the Bankruptcy Court examined whether Hock could maintain a minimum standard of living while paying back her loans and made the following factual findings:

> Hock and her husband live in a four bedroom, two-and-a-half-bathroom house, with a deeded boat slip, adjacent to Lake Norman. The home was purchased for $375,000 in 2017. Altogether, the house and related expenses, cost Hock a minimum of $2,974.32 per month. . . . Significantly, the home was purchased after Hock (1) took out her student loans, (2) underwent thyroid surgery and cancer treatment, and (3) ceased working as a financial advisor at Merrill Lynch. Id. at 20.
>
> Additionally, the Hocks drive two Lexus automobiles, at a monthly cost of $2,012 (lease payments, gas and registration $1,533.28; car insurance, $144 and monthly transportation costs of $335). Id. at 21. . . . Hock offers no explanation why owning and operating two luxury cars is necessary for her household to maintain a minimal standard of living, given that both persons are either retired or disabled. It is significant that these vehicles were leased after Hock's medical conditions and unemployment occurred. See Perkins v. Vermont Student Assistance Corp., 11 B.R. 160, 161 (Bankr. D. Vt. 1980) (buying a new car was a "self[-]imposed hardship").
>
> Then there is entertainment. Hock enjoys a premium Direct TV package costing $259.56 per month, inclusive of add-ons ($50.99 for HBO, $4.99 for the movies extra pack, $25 for an advanced receiver, and $14 for a two-client subscription service). She also pays monthly for Netflix ($17.15), Sirius XM radio ($21.48) the New York Times ($4.29), and Disney Plus subscriptions ($7.50) (totaling $50.42). . . . Some level of entertainment is appropriate under Brunner, but here the monthly expenditures are excessive. . . . In short, Hock's lifestyle is well beyond a "minimal standard of living." It is better described as an upper income

standard, containing many nonessential, and even luxury, expenses.

(JA 362–63). The Bankruptcy Court considered an example of how "Hock could rein in her household expenses so as to both live and provide for a $1,680 student loan payment," (JA 364), finding that:

> Hock is subsisting well above the Brunner "minimal" standard. That "minimal standard of living" does not require a debtor to live in squalor. However, it also does not allow a debtor to live "above his means" and then obtain a discharge of his student loan debt by merely showing that his expenses consume virtually all of his income. In re Waterhouse, 333 B.R. at 1111 (internal citations omitted). . . . Hock fails to meet the first Brunner factor.

(JA 365–66). The Bankruptcy Court also found that Hock failed to meet the second Brunner factor by demonstrating that undue hardship is likely to persist for a significant portion of the repayment period of the Loan. The Bankruptcy Court observed that the "second Brunner factor is 'prospective in nature and looks for exceptional circumstances beyond the debtor's current situation,' is 'the heart of the Brunner test,' and is a 'demanding requirement,' which will only be found in 'rare circumstances.' (JA 366–68 (quoting Frushour, 433 F.3d at 401)). The Bankruptcy Court made the following findings of fact:

> On this record, it is far from clear whether Hock will be able to work going forward. Certainly, she has experienced serious health events. But Hock is now cancer free, and by her own admission, the side effects from her thyroid replacement medication are "minor, the effects of her hypercalcemia are improving, and she is currently able to maintain focus until 2:00 pm in the afternoon. Add to that her extensive education, work history, and the fact that the jobs for which Hock is qualified do not require physical labor. On this record, we can neither conclude that Hock will be able to improve her income prospects over the remainder of the repayment period for her loans, nor can we gainsay it. . . . Importantly, Hock cannot rely on her age alone or the fact that she obtained the loans late in life as an additional circumstance. . . . Hock was fully aware of her age when she took out the loans . . . but choose to defer them . . . . Here, neither age nor health prevents Hock from having a current household income of $6,982.33. Hock's household income is entirely derived from social security, disability and pension income. These revenues will continue irrespective of

> Hock's ability to work. Since Hock presently has the present ability to pay her loans and maintain a minimal standard of living, and since that income will continue to be available to her irrespective of her ability to work, Hock fails the second <u>Brunner</u> prong.

(JA 367–68). Turning to the third <u>Brunner</u> factor, the Bankruptcy Court rejected Hock's claims that she made a good faith attempt to repay her Loans, finding:

> Hock fails the third prong of the <u>Brunner</u> test. She has failed to make more than minimal efforts to pay down her student debt; failed to actively pursue and complete an IRC application, the only repayment plan for which she is currently eligible; failed to actively pursue and complete a TPD discharge application outside of one doctor's visit; and failed to minimize her expenses. These facts, taken as a whole, show that Hock has not acted in good faith to repay her student loans.

(JA 375). In conclusion, the Bankruptcy Court held that "Hock has failed to demonstrate any of the three factors, and her action fails. The evidence drawn from Hock's filed pleadings, discovery responses, deposition, stipulated facts and admitted documents demonstrates that she cannot carry her burden under any of the three prongs." (JA 375). Accordingly, the Bankruptcy Court denied discharge of the Loan. Hock now appeals that decision.

## II.     STANDARD OF REVIEW

"Whether a debtor has met the undue hardship standard is a legal conclusion that is based on the debtor's individual factual circumstances." <u>In re Frushour</u>, 433 F.3d at 398. "[T]hese types of questions are reviewed 'under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining de novo the legal conclusions derived from those facts.'" <u>In re Frushour</u>, 433 F.3d at 398. The Court, therefore, reviews "de novo the determination of whether a debtor has met the undue hardship standard, and . . . the factual underpinnings of that legal conclusion for clear error." <u>In re Frushour</u>, 433 F.3d at 398.

"Findings of fact are clearly erroneous 'when, although there is evidence to support [them], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" McGahren v. First Citizens Bank & Trust Co. (In re Weiss), 111 F.3d 1159, 1166 (4th Cir. 1997) (citing Green v. Staples (In re Green), 934 F.2d 568, 570 (4th Cir.1991)). As the Supreme Court has stated:

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573–74 (1985).

### III. DISCUSSION

This Court will affirm the decision of the Bankruptcy Court. First, the Bankruptcy Court correctly applied the three-prong Brunner test. Moreover, the Bankruptcy Court's factual findings that the non-debtor's spouse's Veterans Affairs ("VA") disability income should be considered under the first prong of the Brunner test in determining whether Hock could maintain a minimum standard of living while paying back her loan are supported by evidence and not clearly erroneous. The Bankruptcy Court's legal conclusion that Hock failed to prove the first prong of the Brunner test that she could not pay back her loan while maintaining a minimal standard of living is in accord with the law.

The Bankruptcy Court's factual findings that Hock has the ability to pay her loans and maintain a minimal standard of living in the future, and that her revenue stream will continue to be available to her moving forward, is also supported by the evidence and not clearly erroneous. The Bankruptcy Court's legal conclusion that Hock did not meet the "demanding requirement"

-10-

of "certainty of hopelessness" in the second Brunner factor is in accord with the law.

The Bankruptcy Court's factual findings that Hock did not make good faith efforts to repay her student loans by only making two payments, failing to seriously consider loan consolidation, failing to pursue administrative discharge, and failing to make even minimal efforts to minimize her expenses, are supported by evidence and not clearly erroneous. The Bankruptcy Court's legal conclusion based on those factual findings, that Hock failed to meet the third prong of the Brunner test by failing to demonstrate that she made a good faith effort to repay her debt, is in accord with the law.

### III. CONCLUSION

For the reasons stated above, the Bankruptcy Court's decision is affirmed.

### ORDER

The Court affirms the Bankruptcy Court's decision that Hock's student loans were not dischargeable as an undue hardship under Section 523(a)(8) of the Bankruptcy Code.

**IT IS SO ORDERED.**

Signed: September 28, 2023

Max O. Cogburn Jr
United States District Judge